### CONNECTICUT SAVINGS BANK *v.* SIDNEY BURGER, TRUSTEE, ET AL.
### (8830)

DALY, CRETELLA and LANDAU, Js.

Argued June 13—decision released September 11, 1990

*Lawrence F. Cafero, Jr.,* for the appellants (defendant Siegfried Berger et al.).

*William A. Schofield,* for the appellee (plaintiff).

DALY, J. The dispositive issue in this appeal is whether the trial court abused its discretion[1] in ordering a strict foreclosure rather than a foreclosure by sale of certain property owned by the named defendant, Sidney Burger, trustee. We conclude that the trial court abused its discretion and reverse the judgment of the trial court.

The following facts are relevant to the disposition of this appeal. The plaintiff commenced this action to foreclose its first mortgage on a tract of unimproved land in the town of Ridgefield owned by the named defendant. The amount of that first mortgage was $72,000 in principal plus interest. Siegfried Berger and Elisabeth Berger were also named as defendants by virtue of their second mortgage of approximately $50,000 on this property. The other defendants named were Raymond Velasquez and Kay Ann Velasquez by virtue of an attachment of $20,000. That encumbrance was subsequent in right to the second mortgage. There were also unpaid taxes of approximately $3200 on this land owed to the town of Ridgefield, bringing the total debt on the property to approximately $145,000. In May, 1989, the Bergers moved for foreclosure by sale

---

[1] The defendants Siegfried Berger and Elisabeth P. Berger further challenged the trial court's rendering the judgment of strict foreclosure instead of foreclosure by sale, claiming that this conclusion was not legally and logically drawn from the subordinate facts found. In view of our conclusion that the court abused its discretion in rendering judgment of strict foreclosure, we need not address this claim.

and in July, 1989, the plaintiff moved for foreclosure by sale. On August 15, 1989, all the defendants were defaulted for failure to disclose a defense.

On October 2, 1989, with only the plaintiff's counsel present, a hearing was held and the plaintiff's appraiser placed a value of $125,000 on the property at issue. After hearing evidence on the value, the court found the value of the property to be $125,000. It also found the debt owed to the plaintiff was $83,338.92, with interest "from the date hereof," and costs taxed at $857.90 for a total of $84,196.82. The $83,338.92 sum included $1200 in attorney's fees. The court then heard argument on only the plaintiff's motion for foreclosure by sale, but the plaintiff indicated to the court that the Bergers had also moved for foreclosure by sale. The court, *Moraghan, J.,* denied these motions[2] and ordered a strict foreclosure, concluding that "[t]he only thing a foreclosure by sale is going to do is eat up what's there for the others. There's no equity in this property." On October 17, 1989, before the time to redeem had expired, the Bergers moved to open the judgment, again seeking a foreclosure by sale. After argument, which included argument by the Bergers' counsel, the court, *West, J.,* denied this motion. The Bergers then appealed to this court.

The Bergers claim that the court abused its discretion in denying the motions for foreclosure by sale and ordering a strict foreclosure. Relying principally on *Fidelity Trust Co.* v. *Irick,* 206 Conn. 484, 538 A.2d 1027 (1988), the Bergers argue that the court abused its discretion when it refused to order a foreclosure by

---

[2] We note that the record does not indicate when and if the court acted on the Bergers' motion for foreclosure by sale of May, 1989. Presumably, it was denied on October 2, 1989, when the court had notice that there were two outstanding motions for foreclosure by sale, one by the plaintiff and one by the Bergers, yet the court rendered judgment of strict foreclosure.

sale because there was substantial equity in the property in excess of the first mortgagee's debt and expenses. We agree.

In *Fidelity Trust Co.*, our Supreme Court reversed this court and concluded that the trial court abused its discretion in denying the second mortgagee's motion for foreclosure by sale where there would have been $10,000 available for distribution[3] to the subsequent encumbrancer who was owed $25,000. Id., 488–91. In that case, the $10,000 would have amounted to 40 percent of the mortgagor's indebtedness to that encumbrancer. Id., 489. The court stated: "in a foreclosure proceeding the trial court must exercise its discretion and equitable powers with fairness not only to the foreclosing mortgagee, but also to subsequent encumbrancers and the owner. The . . . second mortgagee invoked statutory discretionary power of the trial court when it filed a motion for foreclosure by sale as authorized by General Statutes § 49-24. We have stated: 'the remedy of the second mortgagee in such a case as this, if he cannot or does not wish to redeem, is by application for an order of sale under the statutes; General Statutes § 5112 et seq.; and we have suggested that one purpose of this statutory remedy was to meet just a situation as is here present. *Staples* v. *Hendrick,* [89 Conn. 100, 93 A. 5 (1915)]. It is true that the grant of an application rests in the sound discretion of the court; *Bradford Realty Corporation* v. *Beetz,* [108 Conn. 26, 31, 142 A. 395 (1928)]; but if there is need of a sale to

---

[3] The $10,000 figure was determined as follows: The court determined that the amount owed the first mortgagee, plus allowable fees, costs and taxes was $79,600. The court subtracted that figure from the appraised value of $96,750 for a difference of $17,150. The court then subtracted $7000 from that figure, which amount was the plaintiff's estimated expenses for conducting a foreclosure by sale and concluded, "there would be a remainder of $10,000 available for distribution to the subsequent encumbrancer." *Fidelity Trust Co.* v. *Irick,* 206 Conn. 484, 488–89, 538 A.2d 1027 (1988).

protect the just right of the parties, we have little fear that the court will not order it.' *New Haven Bank* v. *Jackson,* 119 Conn. 451, 455, 177 A. 387 (1925)." *Fidelity Trust Co.* v. *Irick,* supra, 490–91.

Likewise, in the present case, there would have been approximately $32,000[4] to be distributed to the Bergers as subsequent mortgagees had a foreclosure by sale been ordered and the full value realized. This amount would have reduced the mortgagor's debt to these encumbrancers by 64 percent.

The plaintiff argues that *Fidelity Trust Co.* is distinguishable from the facts of the present case in two respects. We disagree.

First the plaintiff argues that unlike that in *Fidelity Trust Co.,* the valuation of the property in this case was at issue because of the alleged testimony of the plaintiff's appraiser that her valuation was reached on the assumption that the property would be approved for a septic system for only a two bedroom house, yet, at the time the appraiser testified, this land had not yet been approved for a septic system.[5] This, the plaintiff alleges, is a cost that would have to be borne by the

---

[4] This amount was arrived at by using the methodology employed by *Fidelity Trust Co.* v. *Irick,* 206 Conn. 484, 538 A.2d 1027 (1988). See footnote 3, supra. In the present case, the amount owed the first mortgagee, plus allowable fees ($83,338.92), costs ($857.90) and taxes (approximately $3200) is $87,396.82. This amount, when subtracted from the trial court's and the appraised value of $125,000 yields $37,603.18. We then subtract $5000 from that figure, which amount is the plaintiff's estimated expenses for conducting a foreclosure by sale according to the transcript from the motion to open judgment, and arrive at approximately $32,000.

[5] The record does not entirely support this allegation. The plaintiff's appraiser testified that the value of $125,000 was "predicated on the subject being most likely approved for only a two-bedroom dwelling." The appraiser testified that she was aware that in 1987 preliminary plans "for a two bedroom septic system" were denied because of insufficient information. She then indicated that it was not likely that in the future this land would be approved "for more than a two bedroom [dwelling]."

new owner. This argument is without merit. The valuation of the property was not at issue in this case. It was the plaintiff's own witness whose uncontroverted testimony placed the value of $125,000 on this property. The court found as a matter of fact that the value of the property was $125,000 and called the property "raw land." It placed no condition as to how it made this finding. This finding was supported by the evidence.

The plaintiff then argues that unlike the real estate market in *Fidelity Trust Co.*, the real estate market from October 2, 1989, through the present has been extremely depressed and it is highly unlikely that a foreclosure by sale will result in a bid of $125,000.

This concern was recognized and dealt with in *Fidelity Trust Co.* when the court indicated that "[a] foreclosure by sale may result in bids not only less than the appraised value of the property, but even less than the foreclosing mortgagee's loan, allowable expenses and taxes. Because the trial court has control of the foreclosure proceeding, it can, in the exercise of its discretion, accept or reject a proposed sale." Id., 490.

The trial court concluded that there was no equity in the property. While this may be true to the extent that the total debt on the property of approximately $150,000[6] exceeded the value of $125,000,[7] it was not true as between the debt and expenses of the first mortgage, plus taxes, and the debt on the second mortgage. The trial court abused its discretion when it refused to order a foreclosure by sale.

---

[6] This figure includes the plaintiff's estimated expenses of $5000 for a foreclosure by sale.

[7] We note that the total debt of $123,580.22 owed on the property at issue in *Fidelity Trust Co.* also exceeded the appraised value of $96,750. See *Fidelity Trust Co.* v. *Irick,* 206 Conn. 484, 487–88 n.2., 538 A.2d 1027 (1988).

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.