LAFAYETTE BANK AND TRUST COMPANY *v.* CHARLES SZENTKUTI ET AL. (10271)

NORCOTT, LANDAU and HEIMAN, Js.

Argued January 16—decision released March 10, 1992

*Norman J. Voog,* with whom, on the brief, was *Allen Gary Palmer,* for the appellants (named defendant et al.).

*Edward R. Scofield,* with whom, on the brief, was *Alfred J. Jennings, Jr.,* for the appellee (plaintiff).

LANDAU, J. This is an appeal from a judgment of foreclosure by sale. The defendants[1] claim that the trial court abused its discretion by rendering a judgment of foreclosure by sale rather than a judgment of strict foreclosure with a lengthy law day as had been requested by the plaintiff and the defendants. The defendants also claim that the trial court judge who

---

[1] The property in question is owned by the named defendant and the defendant Vija Szentkuti. They gave the plaintiff a mortgage on their property to secure their guarantee of a loan to the defendant C. V. Construction Company. Connecticut National Bank and the law firm of Gladstone, Schwartz, Baroff and Blum claim interests in the property by virtue of a certificate of attachment and a mortgage deed respectively. In this opinion, we will refer to the appellants, the named defendant, the defendant Vija Szentkuti and the defendant C. V. Construction Company, as the defendants.

presided over the two valuation hearings should have disqualified himself from the second hearing. We affirm the judgment.

The following facts are relevant to this appeal. The plaintiff bank instituted the present foreclosure action against the defendants. In March, 1991, the court conducted a hearing to determine the value of the subject property. Counsel for the defendants, although aware of the hearing, was not present. In his absence, the court concluded that the value of the property was $775,000, rendered a judgment of foreclosure by sale and set a sale date approximately six months later. The defendants filed a motion to open and vacate the judgment, which was granted by the court. A new hearing was ordered. Upon the second valuation hearing, the same court again found that the value of the property was $775,000, although the defendants' appraiser had testified that the property was worth more than this amount. The court rendered a judgment of foreclosure by sale, setting the sale date at just over five months later.[2]

It is well settled in Connecticut that "whether a mortgage is to be foreclosed by sale or by strict foreclosure is a matter within the sound discretion of the trial court." *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 196 Conn. 172, 184, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985); General Statutes § 49-24; see also *Fidelity Trust Co.* v. *Irick,* 206 Conn. 484, 488, 538 A.2d 1027 (1988). The defendants point us to nothing in either the record or the transcript that supports their claim that the trial court abused its discretion in rendering a judgment of foreclosure by sale, nor did our independent

---

[2] Both the plaintiff and the defendants requested that the court render a judgment of strict foreclosure. One of the defendants, Connecticut National Bank, requested that the court render a judgment of foreclosure by sale.

review reveal any abuse of discretion. Moreover, critical to the determination of whether the trial court has abused its discretion in rendering judgment of foreclosure by sale rather than strict foreclosure is whether there is substantial equity in the subject property, and whether the sale would generate enough cash to satisfy the junior creditors. See *Fidelity Trust Co.* v. *Irick,* supra. Here, the court valued the subject property at $775,000. The debt owed the foreclosing mortgagee was $517,125. The amount owed the two senior mortgagees amounted to approximately $48,000. Thus, the amount remaining after payment to the above creditors totaled approximately $200,000.[3] The remaining debts owed to the junior encumbrancers included $545,000 owed to the defendant Connecticut National Bank (CNB). CNB, however, previously had attached property owned by the defendants that was valued at over $2,000,000. Thus, there was no doubt that the $200,000 remaining from the sale, about 36 percent of the total debt owed to CNB, along with any proceeds from the sale of the other attached properties, would generate sufficient cash to satisfy the debt owed CNB.

The determination as to the fair market value of the premises rests within the sound discretion of the trial court; *Hartford Federal Savings & Loan Assn.* v. *Tucker,* supra, 183; as do all of the decisions regarding the terms of the judgment of foreclosure. *Fidelity Trust Co.* v. *Irick,* supra, 490–91; *Connecticut Savings Bank* v. *Burger,* 23 Conn. App. 192, 195–97, 579 A.2d 1097 (1990). "[N]othing in our law is more elementary than that the trier [of fact] is the final judge of the credibility of witnesses and of the weight to be accorded their testimony." (Internal quotation marks omitted.) *Robert S. Weiss & Co.* v. *Mullins,* 196 Conn. 614, 621,

---

[3] If the trial court had accepted the defendants' testimony of the value of the property, an even greater amount would have been available to pay the remaining creditors.

495 A.2d 1006 (1985). With respect to the value of the property, the testimony of the plaintiff's appraiser amply supports the court's adoption of his testimony. The court, therefore, did not abuse its discretion in crediting the testimony of the plaintiff's appraiser. With respect to the court's determination as to the sale date, we similarly find no abuse of discretion.

The defendants also claim, relying on General Statutes § 51-183c,[4] that the judge who presided over the first valuation hearing should have disqualified himself from the second hearing on the same matter. The defendants argue that, although it was never raised below, § 51-183d[5] authorizes us to review this claim. We disagree.

The defendants' reliance on General Statutes §§ 51-183c and 51-183d is misplaced. Section 51-183c unambiguously applies exclusively to "trials," as distinguished from pretrial or short calendar matters. Section 51-183d applies in cases where it is undisputed that the trial court judge has been disqualified from presiding over a case, not where the issue is whether he should have been disqualified.

Statutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law. *Bannon* v. *Schwartz*, 215 Conn. 633, 577 A.2d 1025 (1990); *Shortt* v. *New Milford Police Department*, 212 Conn. 294, 302,

---

[4] General Statutes § 51-183c provides: "No judge of any court who tried a case without a jury in which a new trial is granted, or in which the judgment is reversed by the supreme court, may again try the case. No judge of any court who presided over any jury trial, either in a civil or criminal case, in which a new trial is granted, may again preside at the trial of the case."

[5] General Statute § 51-183d provides: "If a judge acts in any legal proceeding in which he is disqualified, the proceeding shall not by reason thereof be void, but such action shall constitute an irregularity of which advantage may be taken on appeal or, where no appeal lies, by proceedings in error."

562 A.2d 7 (1989); *Commissioner* v. *Freedom of Information Commission,* 204 Conn. 609, 621, 529 A.2d 692 (1987); *Warner* v. *Leslie-Elliott Constructors, Inc.,* 194 Conn. 129, 134, 479 A.2d 231 (1984); *State* v. *Murtha,* 179 Conn. 463, 466, 427 A.2d 807 (1980); *Doe* v. *Institute of Living, Inc.,* 175 Conn. 49, 58, 392 A.2d 491 (1978). If two statutes appear to be in conflict but can be construed as consistent with each other, then the court should give effect to both. *Hirschfeld* v. *Commission on Claims,* 172 Conn. 603, 607, 376 A.2d 71 (1977).

In accordance with these guidelines, we conclude that the valuation hearing did not constitute a "trial" as interpreted by our courts. Thus, General Statutes § 51-183c is inapplicable and the judge need not have disqualified himself from presiding over the second valuation hearing. The term "trial" is defined in a criminal case as a "judicial proceeding at which the guilt or innocence of the defendant to the offense or offenses charged is to be determined." Practice Book § 1021 (11). No parallel definition exists with respect to civil cases. We, therefore, look to the General Statutes and the rules of practice to deduce what the term encompasses in the context of a civil case.

The legislature's use of the term "trial" in General Statutes § 51-183c, rather than the more general term "proceeding," as used in § 51-183d, must be viewed as intentional in light of the presumption that the legislature is aware of the existence of the rules of practice and other legislation and intended to create a consistent body of law. In order to construe these two statutes as consistent with each other we must accord each term a different meaning. The organization of the rules of procedure in civil cases; Practice Book §§ 8 through 591; is illustrative in our attempt to determine what the legislature envisioned the term "trial" to embrace. The rules of practice address pretrial matters; Practice Book § 262 et seq.; short calendar matters; Prac-

tice Book § 205 et seq.; and trial matters; Practice Book § 283 et seq.; separately. It is, therefore, reasonable to conclude that the legislature, aware of the judicially enacted rules of practice, intended that each type of proceeding be treated separately. It is apparent that the legislature intended General Statutes § 51-183c to apply solely to trials and not to all types of adversarial proceedings. The term "trial" was not intended to include either pretrial or short calendar proceedings. The valuation hearing was a short calendar proceeding[6] governed by the rules applicable to such proceedings, not a trial governed by the rules applicable to trial proceedings. The presiding judge, therefore, was not required to disqualify himself from conducting the second hearing on the same matter. Because the presiding judge was not required to disqualify himself under § 51-183c, he is not a "disqualified judge" as embodied in § 51-183d, and thus § 51-183d is inapplicable.

The failure to raise a disqualification issue at trial will bar its review on appeal except in the exceptional circumstance where such "an accusation of actual prejudice has been made against a judge, striking at 'the very core of judicial integrity'; *Felix* v. *Hall-Brooke Sanitarium,* 140 Conn. 496, 501, 101 A.2d 500 (1953) . . . ." *Seal Audio, Inc.* v. *Bozak, Inc.,* 199 Conn. 496, 517, 508 A.2d 415 (1986). No such accusation has been made here.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] See Practice Book § 206.