[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION FOR PREJUDGMENT REMEDY
I.
Introduction
The plaintiff Decima Research d/b/a The Wirthlin Group, a political research firm, seeks payment on an outstanding debt of $23,760.00 for daily campaign tracking surveys done for the Rowland Governor Committee (hereinafter, "RGC") in October 1990 and November 1990. The plaintiff has not brought suit against the RGC, but has sued unsuccessful gubernatorial candidate John Rowland and his campaign treasurer, Alan Cichetti, as individuals. The plaintiff now seeks to attach property of these defendants.
The defendants oppose the plaintiff's application for a prejudgment remedy on two grounds: (1) the plaintiff cannot bring this action as it lacks a certificate of authority from the Connecticut Secretary of the State to transact business in Connecticut; (2) the work that is at the center of this dispute was performed solely on behalf of the RGC and the defendants cannot be held personally responsible for the debt.
 II.
Discussion
 A.
The first issue to be addressed is whether the plaintiff may properly maintain an action in Connecticut even though it lacks a certificate of authority to transact business in Connecticut. General Statutes 33-396 states that "no foreign corporation . . . shall transact business in this state until it has procured a certificate of authority . . . from the secretary of the state . . ." Additionally, General Statutes 33-412 mandates that "no foreign corporation transacting business in this state in violation of section 33-396 shall be permitted to maintain any action, suit or proceeding in any court of this state unless such corporation has obtained a certificate of authority." In view of these statutory requirements and plaintiff's failure to obtain a certificate CT Page 5896 of authority, the viability of this lawsuit depends upon whether the plaintiff was transacting business in this state.
"Whether a foreign corporation is transacting business so as to require a certificate of authority is a question which must be resolved by examining the complete factual circumstances of each case." Peters Production, Inc. v. Dawson,182 Conn. 526, 529 (1980); see also Armor Bronze and Silver Co. Inc. v. Chittick, 221 F. Sup. 505, 511 (D. Conn. 1963). Also, "the standard for transacting business is qualitative, not quantitative." Ward Co. Inc. v. Connecticut Post Limited Partnership, 579 F. Sup. 282, 285 (D. Conn. 1984). The plaintiff Decima Research argues that it does not transact business in Connecticut because General Statutes 33-397 (b)(8) states that a foreign corporation engaging in interstate commerce is not transacting business in Connecticut. Section 33-397 (b)(8) reads, in pertinent part,
 Without excluding other activities which may not constitute transacting business in this state, a foreign corporation shall not be considered to be transacting business in this state . . . by reason of carrying on in this state any one or more of the following activities: . . . (8) transacting business in interstate commerce. . .
Contrary to plaintiff's assertion, this section has been interpreted to mean that "a foreign corporation shall not be considered to be transacting business in this state solely because it carries on in this state one or more of the enumerated activities. This does not exclude a finding that a foreign corporation transacts business in this state if its other activities lead to that conclusion." Connecticut Tool and Manufacturing Co. v. Bowsteel Distributors, Inc., 24 Conn. Sup. 290,296 (1963). Thus, the fact that the plaintiff engages in interstate commerce does not necessarily eliminate the possibility that the plaintiff transacts business in Connecticut if other factors are considered.
While the plaintiff does not have an office in Connecticut and conducted all its polling by telephone from Utah, it polled Connecticut residents about a gubernatorial race in this state and forwarded all bills to the RGC in CT Page 5897 Connecticut. The sole purpose of the contract was to, on a daily basis, solicit campaign information from Connecticut voters. Therefore, after reviewing the factual circumstances of this case, this court believes that the plaintiff, a company engaged in political polling and consulting, was transacting business in Connecticut. Thus, plaintiff's failure to obtain a certificate of authority in Connecticut bars it from maintaining an action in our courts. See General Statutes 33-396 and 33-412.
 B.
The second issue concerns the question of whether this action can be maintained against the candidate and his treasurer. This court believes that even if the plaintiff could maintain a lawsuit in this state, Connecticut campaign financing laws prohibit recovery against the gubernatorial candidate and campaign treasurer as individuals. At the hearing, the plaintiff's chief financial officer, Joel White, testified that the work was performed solely on behalf of the RGC, was a debt of the RGC, and that neither Mr. Rowland or Mr. Chichetti agreed to be personally liable.[1]
There exists no case law in this state on the issue of whether, under Connecticut's statutory scheme, a candidate or campaign treasurer may be held personally responsible for debts incurred by a campaign committee. General Statutes 9-333i(a) and (b) state:
 (a) No financial obligation shall be incurred by a committee unless authorized by the campaign treasurer, except that certain expenditures of a candidate's personal funds may be reimbursed as provided in subsection (k) of this section.
 (b) No candidate, campaign treasurer, or committee shall be liable for any debt incurred in aid of or in opposition to any political party, referendum question or the candidacy of any person or persons for said offices or positions unless such debt was incurred pursuant to an authorization issued under subsection (a) of this section.
CT Page 5898
The plaintiff suggests that this means that the candidate or the treasurer can be held personally liable. This court is not in agreement.
In construing a statute, legislative intent is not found in an isolated sentence, but rather the whole statute must be considered and courts will assume that the legislature intended to accomplish a reasonable and rational result. Warkentin v. Burns, 223 Conn. 14, 20 (1992). "Statutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law." Lafayette Bank Trust Co. v. Szentkuti, 27 Conn. App. 15,19 (1992). A statutory scheme should be construed as a whole. Roach v. Roach, 20 Conn. App. 500, 512 (1990).
Payment of the debt in this action by these defendants would contravene the individual campaign contribution limit of $2,500.00 to a gubernatorial campaign under General Statutes 9-333m(a). Also, payment of this debt by the defendants to the plaintiff would be a corrupt practice under General Statutes 9-333x(5) which prohibits an individual from defraying a campaign debt by payment or contribution to any person or committee other than the campaign treasurer. Lastly, as the defendants point out, a campaign debt must be paid on a check drawn by the campaign treasurer from an institution designated as the campaign committee depository. General Statutes 9-333i(e). Since only a campaign treasurer acting on behalf of the campaign committee may pay debts, it would be an unreasonable interpretation of the statute to require the defendants to pay this debt from their personal funds. Thus, this court believes that the Connecticut campaign financing statutes do not allow the candidate and campaign treasurer to be held personally responsible for the campaign debts.
 III.
Conclusion
For the reason stated, the court does not find that there is probable cause that the plaintiff will be successful and the prejudgment remedy is denied.
MARSHALL K. BERGER, JR. JUDGE, SUPERIOR COURT CT Page 5899