******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ALISON BARLOW *v.* COMMISSIONER OF CORRECTION
## (AC 37417)

Beach, Keller and West, Js.

*Argued February 9—officially released June 28, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Sferrazza, J.)

*Naomi T. Fetterman*, with whom was *Aaron J.
Romano*, for the appellant (petitioner).

*Mitchell S. Brody*, senior assistant state's attorney,
with whom, on the brief, were *Maureen Platt*, state's
attorney, and *Eva B. Lenczewski*, supervisory assistant
state's attorney, for the appellee (respondent).

*Opinion*

KELLER, J. Following a grant of certification to appeal, the petitioner, Alison Barlow, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claims that the court improperly (1) denied his motion for recusal, (2) denied his request for a new evidentiary hearing, and (3) concluded that he failed to demonstrate prejudice as a result of his trial counsel's deficient performance.[1] We agree with the first and second claims raised by the petitioner, reverse the judgment of the habeas court, and remand the case for further proceedings consistent with this opinion.

The following facts and procedural history are relevant to this appeal. In 1998, following a jury trial, the petitioner was convicted of attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a, conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a, two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and alteration of a firearm identification number in violation of General Statutes § 29-36. The petitioner was sentenced to a total effective term of thirty-five years imprisonment. Following a direct appeal brought by the petitioner, this court affirmed the judgment of conviction. *State* v. *Barlow*, 70 Conn. App. 232, 797 A.2d 605, cert. denied, 261 Conn. 929, 806 A.2d 1067 (2002).

Following his conviction, the petitioner brought several petitions for a writ of habeas corpus. At issue in the present appeal is an amended petition that the petitioner filed on January 17, 2002—his third petition for a writ of habeas corpus—in which he alleged in count one that his trial counsel, Attorney Sheridan L. Moore, rendered ineffective assistance in connection with a plea bargain offer[2] and in connection with the representation that she afforded the petitioner during the trial generally.[3] In count two, the petitioner alleged that his prior habeas counsel, Attorney Christopher Neary, rendered ineffective assistance by failing to pursue a claim that Moore had rendered ineffective representation during his criminal trial.

Following a hearing, the habeas court, *Sferrazza, J.*, dismissed the amended petition with respect to the claim of ineffective representation by Moore set forth in count one. With respect to this count, the court, sua sponte, invoked the doctrine of deliberate bypass and stated, in relevant part: "This, the petitioner's third habeas action in which he has asserted claims of ineffectiveness against Moore, is a blatant example of the procedural evils that the deliberate bypass rule was created to thwart." The court denied the petition with respect to the claim of ineffective representation by Neary set forth in count two. In rejecting the claim

that Neary rendered ineffective representation for, in relevant part, failing to pursue a claim of ineffective representation against Moore, the court made several findings with respect to the nature of Moore's representation of the petitioner with respect to the plea offer. In relevant part, the court stated: "The court has found that Moore fully apprised the petitioner as to the terms of the plea offer, including its temporary nature, the strengths and weaknesses of the prosecution and defense cases, and the possible outcomes after trial. . . .

"Moore, at the time of the petitioner's criminal case, had seventeen years of experience handling serious criminal matters as a special public defender and five and one-half years as a public defender for the Waterbury judicial district. This experience entailed defending clients charged with murder and trying such cases to verdict. No expert witness testified critically of Moore's representation of the petitioner. To the contrary, Attorney Neary averred that he examined Moore's performance for the petitioner's defense and found no basis for such an ineffective assistance claim against her.

"The court determines that the petitioner has failed to prove that Moore was deficient in any of the ways alleged surrounding the petitioner's rejection of the nine year plea offer. As a result, the petitioner has also failed to meet his burden of establishing that [prior habeas counsel had] rendered ineffective assistance by withdrawing the claims against Moore through amended petitions." (Citations omitted.)

The petitioner appealed to this court from the judgment of the habeas court. With respect to the petitioner's claim that the habeas court improperly dismissed his claim that Moore had rendered ineffective assistance with respect to the trial court's plea offer, this court ruled that, in the absence of any claim by the respondent, the Commissioner of Correction, that the doctrine of deliberate bypass applied in the present case, the habeas court erroneously had relied on that doctrine in dismissing that aspect of the petition. *Barlow* v. *Commissioner of Correction*, 150 Conn. App. 781, 785–88, 93 A.3d 165 (2014). After reviewing the findings of the habeas court and the evidence in the record, which included Moore's testimony during the habeas trial, this court disagreed with the habeas court's assessment of Moore's representation. This court, referring to Moore's undisputed testimony at the habeas trial, concluded as a matter of law that Moore's performance with respect to the plea offer was deficient "because she did not give the petitioner her professional advice and assistance concerning, and her evaluation of, the court's plea offer." Id., 802.

Although we resolved the issue of deficient performance in the petitioner's favor, this court rejected the

petitioner's argument that, on the basis of the record, we could presume that he was prejudiced, under the applicable standard of prejudice, as a result of Moore's deficient performance concerning the plea offer. Id. This court agreed with the respondent that the habeas court was in the best position to determine an unresolved issue integral to whether the petitioner was prejudiced by Moore's deficient performance, specifically, "whether it is reasonably likely that the petitioner would have accepted the offer had he received adequate advice from Moore." Id., 804. In light of our resolution of the claim concerning Moore, this court concluded that it did not need to consider, on its merits, "the issue of whether Neary's performance was deficient for failing to pursue the issue of Moore's performance." Id., 783 n.1.

In the rescript of our opinion, this court set forth the following order: "The judgment is reversed in part and the case is remanded for further proceedings on the issue of whether the petitioner was prejudiced by counsel's deficient performance. In the event that the habeas court finds that the petitioner has established prejudice, and no timely appeal is taken from that decision, the judgment is reversed and the case is remanded with direction to grant the petition for a writ of habeas corpus. In the event that the habeas court finds that the petitioner has failed to demonstrate prejudice, and no timely appeal is taken from that decision, the judgment is reversed only as to form and the court is ordered to render judgment denying rather than dismissing the petition as it relates to the claim that Moore provided ineffective assistance of counsel." Id., 804–805.

Judge Sferrazza, who had presided over the habeas proceedings and, as discussed previously in this opinion, had issued the prior judgment that was the subject of this court's prior decision in the habeas matter, presided over the proceedings on remand. The record reflects that on August 5, 2014, at a hearing following the issuance of this court's remand order, Judge Sferrazza asked the parties to express their positions with respect to several issues, including whether this court's remand order required the court to hold an evidentiary hearing or whether the order required the court to make the required finding with respect to prejudice on the basis of the evidence in the record. Additionally, Judge Sferrazza raised the issue of whether, following this court's reversal of his prior judgment, he was presumptively disqualified from continuing with the case.

The petitioner argued that this court's remand order required a new evidentiary hearing and argued that the matter should be heard and decided by a different judge. The petitioner's attorney stated that the petitioner would not waive his right to have the matter heard by a different judge. The respondent argued that this court's remand order did not require a new evidentiary hearing,

but merely a decision to be made on the basis of the evidence already in the record. Further, the respondent argued that, because Judge Sferrazza had not yet decided the specific factual issue set forth in this court's remand order, it was proper for him to hear and decide the matter. Thereafter, on August 11, 2014, Judge Sferrazza issued a memorandum of decision in which he concluded that this court's remand order did not require a new evidentiary hearing. In relevant part, the court stated: "The court and the parties have found this remand order somewhat perplexing. The respondent asserts that the Appellate Court's order is in the nature of an articulation order concerning the prejudice determination. Under this view, this court would simply review the evidence adduced at the habeas hearing and render a decision resolving the prejudice question.

"The petitioner, on the other hand, argues that the Appellate Court intended that a new evidentiary hearing take place at which the parties could introduce evidence not previously presented. He also contends that General Statutes § 51-183c would necessitate that a different habeas judge preside over the new evidentiary hearing." The court went on to conclude that the respondent's interpretation of the order was more logical. Among the reasons it set forth for its interpretation of this court's remand order, the court observed that the order did not explicitly mandate a new hearing, but merely necessitated further proceedings. Accordingly, with respect to the prejudice issue before the court, it directed the parties to submit supplemental briefs "based on the evidence previously admitted . . . ."

On August 15, 2014, the petitioner filed a motion for review of Judge Sferrazza's decision with this court. The respondent opposed the motion. This court dismissed the motion on the ground that the issues raised therein were not subject to interlocutory review.[4]

On September 24, 2014, the petitioner filed a motion for recusal in which he brought into focus some of the arguments he had raised at the previous hearing concerning this court's remand order.[5] Relying on § 51-183c[6] and Practice Book § 1-22 (a),[7] the petitioner argued that, following this court's reversal of the prior judgment, Judge Sferrazza was prohibited from retrying the case on remand. Additionally, relying on rule 2.11 (a)[8] of the Code of Judicial Conduct, the petitioner argued that recusal was warranted because Judge Sferrazza's impartiality during the proceedings on remand might reasonably be questioned. The petitioner, first noting that, in his prior decision, Judge Sferrazza, sua sponte, had applied the doctrine of deliberate bypass in the respondent's favor and, in the context of rejecting the petitioner's claim against habeas counsel, had rejected the petitioner's argument that Moore had performed deficiently in connection with the plea agreement, argued: "It is difficult to conceive that the

trial court will be able to render a finding that [the petitioner] was prejudiced by conduct that, on the same record, the trial court did not find to be deficient, and afford [the petitioner] the requested relief. In order to preserve the appearance of impartiality and [the petitioner's] constitutional rights to a fair trial, this court should recuse itself."

In his memorandum of decision denying the petitioner's motion for recusal, Judge Sferrazza stated in relevant part: "The court discerns no cogent reason for recusal. . . . [T]his court has construed the remand order to compel the court to issue findings and rulings pertinent to the prejudice component of [*Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] without the taking of additional evidence. It would be impossible for a different judge to fulfill that mandate. This would fly in the teeth of the Appellate Court's remand order.

"More importantly, the mere fact that a trial court has ruled against a party on one aspect of a case and that ruling was reversed on appeal fails to implicate General Statutes § 51-183c. The Appellate Court did not order a new trial, nor did it reverse this court as to the *prejudice* prong of *Strickland*." (Emphasis in original.) The court, relying on *Taft* v. *Wheelabrator Putnam, Inc.*, 255 Conn. 916, 763 A.2d 1044 (2000), and *State* v. *Santiago*, 245 Conn. 301, 715 A.2d 1 (1998), concluded that recusal was not required by the Code of Judicial Conduct. The court stated in relevant part: "The present case, on remand, involves no new evidence. Although it is not an articulation order, which compels a trial court to explain the conclusion it reached previously, the remand order is in the nature of an articulation of a previously undecided matter. . . . [R]eversal of a judge's decision on one, limited issue in a case does not disqualify the judge from further participation with respect to other aspects of the case despite having the salutary experience of being overturned by a higher tribunal."

After the court ruled on the motion for recusal, both the petitioner and the respondent filed briefs with respect to the issue set forth in this court's remand order. The respondent objected to any attempt by the petitioner to rely on matters that were outside of the evidence that had been admitted at the petitioner's habeas trial.

In his written memorandum of decision of November 17, 2014, which is the subject of this appeal, Judge Sferrazza stated: "Because the remand order [of the Appellate Court] lacks clarity in some respects, a controversy had arisen as to whether the Appellate Court intended to require an entirely new habeas trial, before a different habeas judge, limited to adjudicating the prejudice issue, or simply was returning the matter to this court to make findings and draw conclusions as to

prejudice utilizing the prejudice test . . . based on the evidence previously admitted. This court resolved that conundrum . . . holding that the Appellate Court meant for this court to supplement its original decision by determining those factual issues as to prejudice, which were previously unaddressed [in its prior decision]."

In its memorandum of decision, the court set forth several findings concerning Moore that it had set forth in its prior memorandum of decision addressing the merits of the petition for a writ of habeas corpus. Although it is unnecessary for us to set forth these findings in detail, we observe that the court once again set forth a generally positive assessment of Moore's performance with respect to the plea offer. The habeas court found that Moore advised the petitioner of the status of the plea offer made by the trial court, "thoroughly reviewed" the evidence and possible witnesses, discussed matters related to the plea negotiations, and cautioned the petitioner that "a jury might find the prosecution's case persuasive despite his denials of participation in the drive-by shooting" at issue in the case. The petitioner, who received a sentence of thirty-five years of incarceration, attempted to demonstrate that, with proper counsel from Moore, it is reasonably likely that he would have accepted a plea offer that would have required him to serve fourteen years, execution suspended after nine years. The court found: "At no time did the petitioner express any interest in accepting a plea disposition which entailed more than six years incarceration. At the habeas trial, the petitioner averred that, had Moore recommended that he agree to the plea offer as being in his best interest, he would have readily changed his plea and accepted the sentence indicated, namely, fourteen years, execution suspended after the service of nine years." After observing that this court had determined that Moore had performed deficiently for failing to provide the petitioner with professional advice and assistance, including her evaluation of the plea offer, the habeas court observed that the petitioner had not presented any expert evidence to support that determination. The court also observed that Neary had testified that Moore had "handled the petitioner's criminal matter properly . . . ."

The court went on to conclude that the petitioner failed to establish by a preponderance of the evidence that there was a reasonable likelihood that he would have accepted the proposed disposition and given up his right to a jury trial had Moore advised him that accepting the offer was in his best interest. Among the findings made by the court with respect to this determination, the court found that the petitioner had believed that his codefendants planned on retracting their statements implicating him in the crimes, the petitioner had consented to Neary omitting allegations of ineffective assistance of counsel claims against Moore

in the context of prior habeas matters, and that the petitioner had "acknowledged that he never inquired of Moore as to what he should do, nor about her lack of recommendation [with respect to the plea offer]." After observing that the petitioner had a lengthy criminal history and a familiarity with the criminal court system, the court stated: "If the petitioner was irresolute in his desire to go to trial, unless the plea offer was reduced to six years imprisonment, one would have expected him to request Moore's opinion as to his best course of action or know the reason why she declined to afford him the benefit of that opinion." On the basis of its findings, the court denied the amended petition for a writ of habeas corpus. This appeal followed.

I

First, we address the petitioner's claim that the court improperly denied his motion for recusal. We agree with the petitioner's claim.

Before this court, the petitioner reiterates the arguments that he raised before Judge Sferrazza, as set forth previously in this opinion. Thus, the petitioner relies on the undisputed procedural history of this case as well as § 51-183c, Practice Book § 1-22 (a), and rule 2.11 (a) of the Code of Judicial Conduct.

The issue of whether § 51-183c required Judge Sferrazza's recusal in the present case is an issue of statutory interpretation over which we exercise plenary review. See, e.g., *State* v. *Smith*, 317 Conn. 338, 346, 118 A.3d 49 (2015). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . In seeking to determine [the] meaning [of a statute], General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Efstathiadis* v. *Holder*, 317 Conn. 482, 486–87, 119 A.3d 522 (2015).

The mandate of § 51-183c, a subject of prior judicial interpretation, is plain and unambiguous. It provides in relevant part: "No judge of any court who tried a case

without a jury . . . in which the judgment is reversed by the Supreme Court, may again try the case. . . .” General Statutes § 51-183c. Our rules of practice give effect to this statutory right by providing in relevant part: “A judicial authority shall, upon motion of either party or upon its own motion, be disqualified from acting in a matter if such judicial authority is disqualified from acting therein . . . because the judicial authority previously tried the same matter and . . . the judgment was reversed on appeal. . . .” Practice Book § 1-22 (a).

“[Section] 51-183c, by its plain terms, applies . . . to judges.” *State* v. *AFSCME, Council 4, Local 1565*, 249 Conn. 474, 480, 732 A.2d 762 (1999). “The statute explicitly prohibits a judge who tries a case that is thereafter reversed to try the case on remand. There is no reasonable manner in which the language of the statute can be interpreted to yield a different result.” *Gagne* v. *Vaccaro*, 133 Conn. App. 431, 437, 35 A.3d 380 (2012), rev’d on other grounds, 311 Conn. 649, 90 A.3d 196 (2014). “Furthermore, we have narrowly construed § 51-183c to apply solely to trials and not to all types of adversarial proceedings. . . . Section 51-183c does not apply to pretrial or short calendar proceedings.” (Citation omitted; internal quotation marks omitted.) *Board of Education* v. *East Haven Education Assn.*, 66 Conn. App. 202, 216, 784 A.2d 958 (2001) (declining to extend § 51-183c to arbitration process); see also *Lafayette Bank & Trust Co.* v. *Szentkuti*, 27 Conn. App. 15, 19, 603 A.2d 1215 (1991) (“[s]ection 51-183c unambiguously applies exclusively to ‘trials,’ as distinguished from pretrial or short calendar matters”), cert. denied, 222 Conn. 901, 606 A.2d 1327 (1992).

Consistent with the arguments advanced by the respondent, Judge Sferrazza reasoned that recusal was not warranted because, in his prior decision, he had not made any findings concerning prejudice and, thus, this court had not reversed his prior judgment on the basis of such findings. Judge Sferrazza also reasoned that recusal was not warranted because he viewed this court’s reversal as relating to only one aspect of his decision. Likewise, the respondent urges us to conclude that § 51-183c does not apply because this court’s rescript expressly stated that the habeas court’s judgment was “reversed in part . . . .” *Barlow* v. *Commissioner of Correction*, supra, 150 Conn. App. 804.

Neither the court nor the respondent has advanced any authority in support of their narrow interpretation of § 51-183c, and we are unaware of any such authority. The statute broadly applies to judges who have tried cases without a jury in which their judgment later is “reversed.” The statute does not restrict its application to cases in which issues to be considered on remand are identical to those that already had been decided by the trial judge. The reversal in the present case followed

a trial, and pertained to the same general claim that was before the court during the proceedings on remand, namely, whether, under the proper standard, his trial counsel's deficient performance prejudiced the petitioner, thereby depriving him of his right to a fair trial. The habeas court's prior judgment dismissed the petitioner's petition with respect to the claim that Moore had rendered ineffective assistance and denied his claim that prior habeas counsel had rendered ineffective assistance. It appears that this court reversed the judgment *in part*, rather than in its entirety, because it was able to dispose of the appeal without reaching the merits of all of the claims set forth therein, including the claim challenging that portion of the habeas court's judgment in which it denied the petition. Specifically, this court explained that, in light of its resolution of the petitioner's claim that the habeas court improperly had dismissed the petition with respect to his claim concerning Moore's representation as to the plea offer, it did not need to consider the claim that the habeas court improperly had denied the petition with respect to his claim that prior habeas counsel had rendered ineffective assistance. *Barlow* v. *Commissioner of Correction*, supra, 150 Conn. App. 783 n.1.

Judge Sferrazza tried the petitioner's habeas case and rendered a judgment that, in part, was reversed by this court. Although this court did not specify in its remand order that a different judge should hear the case on remand, the requirement imposed by § 51-183c nonetheless applied to the proceedings on remand. This court, in either its prior decision or remand order, did not include any language that suggested that Judge Sferrazza should hear the case on remand, the purpose of which was not to determine whether error occurred, but to correct error. Cf. *State* v. *Douglas*, 10 Conn. App. 103, 119, 522 A.2d 302 (1987); see also *State* v. *Gonzalez*, 186 Conn. 426, 436 n.7, 441 A.2d 852 (1982). It is of no consequence to the proper application of the statute that the remand order required consideration of an issue in the case that Judge Sferrazza had yet to resolve on its merits or that the prior judgment had not been reversed with respect to Judge Sferrazza's resolution of that unresolved issue of fact. In order for the petitioner to prevail on the issue of prejudice, the habeas court, on remand, would have to substitute the decision of the Appellate Court in place of its own prior decision, and to change not only the reasoning or basis of its prior decision, but the decision itself, which held that trial counsel's conduct was *not* deficient. See *State* v. *Lafferty*, 191 Conn. 73, 76, 463 A.2d 238 (1983) (on remand trial court must proceed in conformity with views expressed in reviewing court's opinion).

Because we conclude that recusal was warranted under § 51-183c and Practice Book § 1-22 (a), we need not address the petitioner's alternative argument that recusal was warranted under rule 2.11 (a) of the Code

of Judicial Conduct. Rule 2.11 (a) of the Code of Judicial Conduct provides in relevant part that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned . . . ."

Although we need not resolve the petitioner's alternative argument that the court did not properly consider the application of rule 2.11 (a) in the present case, we observe that, from an early stage in the remand proceedings, Judge Sferrazza expressed his uncertainty with respect to this court's remand order, including the issue of whether it was proper for him to hear the case on remand. He afforded the parties an ample opportunity to address the issue of his presumptive disqualification under § 51-183c. Judge Sferrazza's decision reflects that because he concluded, albeit erroneously, that his participation in the proceedings on remand was required by this court's remand order,[9] he logically rejected the petitioner's argument that his participation in the proceedings on remand gave rise to a reasonable question concerning his impartiality.[10]

The respondent is unable to demonstrate that Judge Sferrazza's failure to recuse himself from the case on remand was harmless error. We conclude that the proper remedy is to reverse the judgment denying the petition for a writ of habeas corpus and to remand the case to the habeas court, so that the issue set forth in this court's prior remand order may be tried by another judge.

## II

Although we have concluded in part I of this opinion that the judgment must be reversed and we remand the case to the habeas court, we shall address the petitioner's claim that the habeas court improperly denied his request for a new evidentiary hearing because that issue is likely to arise during the proceeding on remand. See *State* v. *Tabone*, 292 Conn. 417, 431, 973 A.2d 74 (2009) (addressing issue likely to arise on remand). We agree with the petitioner.

As we have explained previously in this opinion, this court's remand order stated in relevant part: "The judgment is reversed in part and the case is remanded *for further proceedings* on the issue of whether the petitioner was prejudiced by counsel's deficient performance." (Emphasis added.) *Barlow* v. *Commissioner of Correction*, supra, 150 Conn. App. 804. Judge Sferrazza invited the parties to address the issue of whether he should hold a hearing on remand. When the parties first appeared before the court to discuss the nature of the proceedings on remand, the petitioner represented that he wished to present additional evidence to the court, even specifying the nature of some of the additional evidence he intended to present.[11] In declining this request, the court appears to have been persuaded by

the fact that the remand order did not explicitly mandate a new hearing. Agreeing with the respondent's interpretation of the remand order, the court viewed its role as being in the nature of providing an articulation. Thus, the court ordered the parties to brief the prejudice issue solely on the basis of the evidence previously submitted to the court.

"Determining the scope of a remand is a matter of law because it requires the trial court to undertake a legal interpretation of the higher court's mandate in light of that court's analysis. . . . Because a mandate defines the trial court's authority to proceed with the case on remand, determining the scope of a remand is akin to determining subject matter jurisdiction. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . .

"Well established principles govern further proceedings after a remand by this court. In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted *in light of the opinion* . . . . This is the guiding principle that the trial court must observe. . . . The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein. . . . These principles apply to criminal as well as to civil proceedings. . . . The trial court cannot adjudicate rights and duties not within the scope of the remand. . . . It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning. No judgment other than that directed or permitted by the reviewing court may be rendered, even though it may be one that the appellate court might have directed. . . .

"We have also cautioned, however, that our remand orders should not be construed so narrowly as to prohibit a trial court from considering matters relevant to the issues upon which further proceedings are ordered that may not have been envisioned at the time of the remand. . . . So long as these matters are not extraneous to the issues and purposes of the remand, they may be brought into the remand hearing." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Brundage*, 320 Conn. 740, 747–48, A.3d    (2016); accord *Higgins* v. *Karp*, 243 Conn. 495, 502–503, 706 A.2d 1 (1998); *Halpern* v. *Board of Education*, 231 Conn. 308, 313, 649 A.2d 534 (1994).

The narrow issue presented in the present claim is whether the habeas court properly construed the remand order such that it was akin to a request for articulation, and therefore did not permit the presentation of additional admissible evidence relevant to the issue submitted to the habeas court for its resolution. The remand order required "further proceedings," thus

using a broad phrase that does not preclude an evidentiary hearing. Nothing in the remainder of the remand order, as interpreted in light of the opinion, limited the habeas court to consider only the evidence that had been admitted in the context of the prior proceeding.

Moreover, it was not appropriate for the court to construe the order as being in the nature of an articulation request. As the court did not make findings with respect to prejudice in its prior opinion, there were no relevant findings for the court to explain. If this court had determined that it was appropriate for the habeas court merely to make a finding with respect to the issue of prejudice on the basis of the evidence in the record, it would not have ordered "further proceedings," for that purpose, but merely would have instructed the court to articulate with respect to that limited factual issue that had been litigated by the parties at the first habeas trial. Further, it is not reasonable to construe the remand order as a request for articulation because, in the context of an articulation, the court is unable to alter any of its original findings. An articulation request is appropriate if "the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial [court] to rule on an overlooked matter." (Internal quotation marks omitted.) *Dickinson* v. *Mullaney*, 284 Conn. 673, 680, 937 A.2d 667 (2007). None of these circumstances existed in the present case, in which, because of this court's resolution of the petitioner's appeal, it became necessary for the court to resolve the factual issue related to prejudice. "It is well established that a trial court may not alter its initial findings by way of a further articulation . . . . [A]n articulation is not an opportunity for a trial court to substitute a new decision [or] to change the reasoning or basis of a prior decision . . . ." (Citations omitted; internal quotation marks omitted.) *Sosin* v. *Sosin*, 300 Conn. 205, 240, 14 A.3d 307 (2011).

Typically, the next step in our analysis would be to consider whether the court's failure to afford the parties an opportunity to present evidence was harmful; *Higgins* v. *Karp*, supra, 243 Conn. 506; we need not reach that issue, as it relates to a proper remedy in light of our resolution of the issue in part I of this opinion, which leads us to remand the case for further proceedings. We have addressed the present claim to clarify, for purposes of those further proceedings, that this court's prior remand order did not preclude an evidentiary hearing. Because the present case will be remanded to a different habeas court judge for further proceedings related to the issue of prejudice under *Strickland*, we anticipate that a hearing will be conducted during which the petitioner will be afforded an opportunity to present evidence with respect to the issue of prejudice.

The judgment is reversed and the case is remanded

to the habeas court for a hearing before a different judge for the purpose of determining the issue of prejudice in accordance with this opinion.

In this opinion the other judges concurred.

[1] Because our resolution of the petitioner's first claim is dispositive of the appeal, we need not address his third claim. We will address his second claim because the issue involved therein is likely to arise during the proceedings on remand.

[2] Specifically, the petitioner alleged: "Trial counsel's representation with regard to the plea bargain offer was ineffective in the following ways:

"a. counsel failed to advise the petitioner that the offer was a one-time offer and if not accepted immediately it would be withdrawn;

"b. counsel failed to explain the court's position regarding the offer;

"c. counsel failed to explain that the court would not accept a counteroffer from the petitioner;

"d. counsel failed to return to the lockup and advise the petitioner that the court rejected his counteroffer so that the petitioner would have an opportunity to accept the court's offer;

"e. counsel failed to provide a meaningful explanation of the plea offer extended by the court;

"f. counsel failed to advise the petitioner as [to] the benefits of accepting the court's offer;

"g. counsel failed to recommend the petitioner accept a beneficial offer;

"h. counsel failed to request [that] the court continue the case to give the petitioner an opportunity to consider the offer and/or discuss the offer with family before the court withdrew the offer;

"i. counsel failed to discuss the strength of the state's case and evidence before the plea offer was withdrawn;

"j. counsel failed to advise the petitioner of the mandatory minimums, maximum sentences of each separate offense and the effect of consecutive sentences;

"k. counsel failed to ensure [that] the petitioner had an opportunity to accept the court's offer after he was fully advised of all implications, legal and otherwise."

[3] The petitioner alleged: "Trial counsel's representation with regard to trial was ineffective in the following ways:

"a. counsel failed to visit the petitioner in jail to discuss the state's evidence, the strength of the state's case, the defenses which could be presented and evidence which could be presented in defense of the case;

"b. counsel failed to keep [the] petitioner informed as to the status of the case;

"c. counsel failed to communicate with [the] petitioner either in writing or by telephone;

"d. counsel failed to advise the petitioner of the specific elements of each crime charged and the maximum and minimum penalties which could be imposed if convicted;

"e. counsel failed to meet with potential witnesses prior to trial;

"f. counsel failed to request [that] the physical evidence be examined by the state forensics laboratory;

"g. counsel failed to develop any theory of defense for trial;

"h. counsel failed to file a motion in limine to prevent testimony about statements allegedly made by the petitioner to police officers;

"i. counsel failed to do any investigation prior to trial."

[4] As a result, this court's ruling on the motion for review did not assist in resolving the issues raised by Judge Sferrazza concerning the remand order.

[5] Attached to the motion was an affidavit from the petitioner's counsel, Aaron J. Romano, in which he averred in relevant part that the motion was made in good faith and in furtherance of the petitioner's constitutional rights.

[6] General Statutes § 51-183c, entitled, "Same judge not to preside at new trial," provides: "No judge of any court who tried a case without a jury in which a new trial is granted, or in which the judgment is reversed by the Supreme Court, may again try the case. No judge of any court who presided over any jury trial, either in a civil or criminal case, in which a new trial is granted, may again preside at the trial of the case."

[7] Practice Book § 1-22 (a) provides in relevant part: "A judicial authority shall, upon motion of either party or upon its own motion, be disqualified from acting in a matter if such judicial authority is disqualified from acting therein pursuant to Rule 2.11 of the Code of Judicial Conduct or because the judicial authority previously tried the same matter and a new trial was granted therein or because the judgment was reversed on appeal. . . ."

[8] Rule 2.11 (a) of the Code of Judicial Conduct provides in relevant part: "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned . . . ."

[9] The record reflects that Judge Sferrazza also based his decision, in part,

on his belief that this court's remand order precluded him from considering additional evidence. As we discuss in part II of this opinion, we disagree with this construction of the order.

[10] In resolving the recusal issue, Judge Sferrazza relied on *Taft* v. *Wheelabrator Putnam, Inc.*, supra, 255 Conn. 916, and *State* v. *Santiago*, supra, 245 Conn. 340–41 n.25. Having reviewed these authorities, we conclude that neither of them governs the outcome of the recusal issue before us. In *Taft*, our Supreme Court did not set forth any analysis, let alone a holding, related to the issue of a trial court's involvement in a case on remand following a reversal of its judgment by a reviewing court. It does not appear that such issue was raised or considered in *Taft*. In *Santiago*, our Supreme Court reversed the judgment of a trial court with respect to its decision not to conduct a more extensive inquiry into a postverdict allegation of juror misconduct, and remanded the case for further proceedings. *State* v. *Santiago*, supra, 340. On the basis of certain findings by the trial court, the defendant raised a concern with respect to the court's impartiality on remand and claimed that a different trial judge should handle the case on remand. Id., 340–41 n.25. Our Supreme Court stated that the findings at issue "[did] not render the court biased and [were not a] bar to conducting the necessary further inquiry on remand." Id., 341 n.25. In its brief discussion of this issue, the court did not refer to § 51-183c or Practice Book § 1-22 (a). We observe that the court did not remand the case for a new trial on the merits of the case, but for further proceedings related to an allegation of juror misconduct. As opposed to a new trial, such a proceeding is more like a sentencing hearing, a hearing related to pretrial matters, or a short calendar hearing— proceedings to which § 51-183c does not apply. See, e.g., *State* v. *Miranda*, 260 Conn. 93, 131, 794 A.2d 506 (§ 51-183c does not apply to sentencing hearings), cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002); *Board of Education* v. *East Haven Education Assn.*, supra, 66 Conn. App. 216 (§ 51-183c does not apply to pretrial hearings or short calendar hearings). In light of the particular circumstances of that case and the issues that would come before the court on remand, it determined prospectively that the trial judge's participation in the case on remand would not give rise to an appearance of impartiality or bias. Its determination in this regard was dispositive of the issue of the propriety of the trial court's participation in the case on remand. This court, however, did not make a similar determination in its decision in the petitioner's prior habeas appeal.

[11] The petitioner argued that he had been assigned new counsel who determined there was additional, available evidence bearing on the prejudice inquiry that had not been presented at the first habeas trial. Both at the hearing and in later submissions to the court, the petitioner explained that he intended to present new evidence that included, but was not limited to, transcripts from his criminal trial, expert testimony pertaining to trial counsel's plea advice, the arrest warrant for the petitioner, the mittimuses reflecting the sentences received by the petitioner's two codefendants, testimony from the petitioner's two codefendants, and the witness list from the petitioner's criminal trial. The petitioner attached some of this additional evidence to his posttrial brief but, following an objection by the respondent, the court declined to consider such materials.

Among the arguments advanced in his posttrial brief, the petitioner argued that such evidence was relevant to proving that, if Moore had counseled the petitioner adequately, he would have had accurate and relevant information that would have affected his decision with respect to the plea. This information, the petitioner argued, should have included an accurate assessment of the strength of the state's case. Additionally, the petitioner argued that Moore failed to explain the error of the petitioner's belief that the state's case would be significantly weakened if his two coconspirators decided not to stand behind their written statements to the police, which implicated themselves and the petitioner in the shootings, or if they decided not to testify against him at his trial. The petitioner argued that competent advice would have conveyed that, even if the coconspirators did not testify, it was possible for the state to introduce their statements implicating the petitioner under § 8-6 (4) of the Connecticut Code of Evidence as dual inculpatory statements, made against the penal interests of the two codefendants and the petitioner. In the event that the two codefendants testified contrary to their incriminatory statements made to the police, the petitioner argued, it was possible for the state to introduce the statements of the coconspirators under the doctrine of *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), which is codified in § 8-5 (1) of the Connecticut Code of Evidence, or § 6-10 of the Connecticut

Code of Evidence. The petitioner also argued that, insofar as there was evidence that his plea decision was based on his belief that he had an alibi defense, Moore did not file a notice of alibi and, in any event, was unable to present the testimony of witness that could have provided such a defense. Moreover, the petitioner intended to demonstrate that Moore failed to assess the "severe punishment" that he could expect following a conviction.