STATE OF CONNECTICUT *v.* ANGEL GONZALES

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued January 6—decision released March 9, 1982

*Bruce A. Sturman,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*Carl J. Schuman,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's

attorney, *Patrick J. Clifford,* assistant state's attorney, and *Elizabeth Palmer,* for the appellee (state).

PETERS, J. The defendant, Angel Gonzales, appeals from his conviction on a five-count information charging him with three counts of robbery in the first degree; General Statutes § 53a-134 (a) (2); one count of conspiracy; General Statutes § 53a-48; and one count of larceny in the second degree; General Statutes §§ 53a-119, 53a-119 (8) and 53a-123 (a) (1). The defendant was found guilty after a trial to a jury. His appeal raises two issues, one evidentiary and one procedural.

The jury might reasonably have found the following facts. On October 26, 1978, at about 11 p.m., two men, one armed with a shotgun, robbed the cash registers, the manager, and the patrons of a Lum's restaurant in Cheshire. The robbers wore ski masks which substantially concealed their facial features; they spoke with a Spanish accent. Only the manager was able to identify the defendant as the gunman who had committed the robbery. When the police arrived at the scene at about 11:15 p.m., they found a small wooden chip on the restaurant floor and several bills of various denominations in the parking lot outside the restaurant.

About an hour earlier, at a different restaurant in Cheshire, about five miles north of the Lum's, the defendant and his brother were observed having a drink. They left that restaurant in a white Mustang with the license plate VN 2804. Immediately after the robbery, a white Mustang was seen travelling north, at a high rate of speed, at a location between the two restaurants. The VN 2804 Mustang, which

had been stolen the day before the robbery, was not otherwise connected with the incident at the Lum's.[1] None of the witnesses at the Lum's had seen how the robbers had come or how they had fled from the scene.

Three days after the robbery the police recovered a shotgun to which the wooden chip found on the Lum's floor belonged. The gun was recovered in another stolen car; when that car was stopped, it was not occupied by the defendant. Dusting of the gun produced no identifiable fingerprints.

The most damaging evidence directly connecting the defendant with the Lum's robbery came from Eric Colon. Colon was awaiting sentence and had been promised favorable consideration on a number of unrelated outstanding arrest warrants. He testified to one conversation before the robbery in which the defendant had said that he was planning "to hit" the Lum's, and to two conversations after the robbery in which the defendant had said that he had "hit" the restaurant.

The defendant does not challenge the sufficiency of this evidence to support his conviction on all counts of the information. Instead, he maintains that the trial court erred (1) by admitting into evidence prejudicial hearsay of police radio broadcasts stating that a white Mustang was involved in the Lum's robbery and (2) by failing to inspect, in camera, a written statement given to the state by Eric Colon and by failing to have the statement in its entirety sealed and preserved as an exhibit. We will consider these claims of error separately.

---

[1] The stolen car was the basis for the count of the information charging the defendant with larceny.

The defendant's evidentiary claim must be placed into context. At the trial, Cheshire Police Lieutenant Miran Verner testified, without objection, that he had observed a white Mustang speeding north on Main Street as he was making his way southward to investigate the Lum's robbery. He also testified, without objection, that he had radioed to the police cars behind him to be advised of a white northbound Mustang. Thereafter, two other Cheshire police officers, Sergeant Mark Youngquist and Patrolman Stephen O'Connor, who came to assist in the investigation of the robbery, were permitted to testify, over objection, that they had heard radio broadcasts about the robbery and about the white Mustang. Despite some effort to head off the white Mustang, it was not again seen by the police on the night of the robbery.

The defendant maintains that the officers' testimony should not have been admitted into evidence because their statements constituted hearsay about the involvement of the white Mustang. We do not agree. The defendant's objections might have had some merit had the questionable association of the car with the robbery not been put into evidence by the Verner testimony. Verner's testimony was, as the defendant concedes, not subject to objection because he testified to what he himself had observed. The other officers merely reported what they had heard over the police radio as an explanation for their own subsequent conduct. The testimony of the other officers was not offered for the truth of the assertions made over the police radio but rather to show the effect of the broadcasts on their hearers. Such testimony is not barred by the hearsay rule. *State* v. *Vennard,* 159 Conn. 385, 392, 270 A.2d 837, cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed.

2d 625 (1970); see *United States* v. *DeVincent*, 632 F.2d 147, 151 (1st Cir.), cert. denied, 449 U.S. 986, 101 S. Ct. 405, 66 L. Ed. 2d 249 (1980); *United States* v. *Stout*, 599 F.2d 866, 869–70 (8th Cir.), cert. denied, 444 U.S. 877, 100 S. Ct. 163, 62 L. Ed. 2d 106 (1979); *State* v. *McDowell*, 179 Conn. 121, 123–24, 425 A.2d 935 (1979); 2 Wharton, Criminal Evidence (Torcia Ed. 1972) § 274; 6 Wigmore, Evidence (Chadbourn Ed. 1976) § 1789.[2]

The defendant's alternate claim of error arises out of the denial of his request to have the court review the entirety of a written statement given to the state by Eric Colon, the principal witness against the defendant. After Colon's testimony, the defendant was provided with a small portion of the Colon statement, some seven pages out of a transcribed statement of over one hundred pages. The defendant thereupon asked for the remainder of the statement in order to be able to conduct a full cross-examination concerning Colon's self-interest in testifying on behalf of the state. The state resisted the defendant's request on the ground that the statement contained pending matters that were likely to lead to future arrests of individuals whom the state did not want forewarned. The defendant then asked the trial court to inspect the statement in camera to determine whether all of the material relevant to the present case had in fact been dis-

[2] Possibly the officers' evidence, although not hearsay, might have been excluded because of its potentially prejudicial effect upon the jury. That ground was not urged upon the court below and has only been raised obliquely in this court. In any event, admission was not harmful under all of the circumstances here because the evidence given by these officers was merely cumulative of that previously and properly given by Verner. *State* v. *Barber*, 173 Conn. 153, 160, 376 A.2d 1108 (1977); *State* v. *Jeustiniano*, 172 Conn. 275, 283, 374 A.2d 209 (1977); *State* v. *Vennard*, 159 Conn. 385, 393, 270 A.2d 837, cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625 (1970).

closed. The state, in apparent agreement with this proposed procedure, responded, "[t]hat's the only thing we can do is have your Honor go through the whole statement. I can show you which parts I took out of it." Nonetheless, the trial court chose not to conduct an inspection of the Colon statement, and did not order it sealed as an exhibit. The court concluded that the defendant's interests would be sufficiently protected by permitting Colon to be cross-examined concerning any other possible criminal involvement that might have influenced his testimony, and by charging the jury in cautionary language about Colon's credibility. The defendant took a timely exception to this substitute procedure. He now renews his argument that he was entitled to a judicial inspection of the whole Colon statement to determine whether it contained additional material relating to Colon's testimony in this case. We agree.

Our rules of practice have provided discovery procedures for criminal cases since 1972.[3] Under the provisions of §§ 752[4] and 753[5] of the Practice

---

[3] From 1972–1976, the rules governing disclosure of the statements of witnesses were to be found in Practice Book §§ 533M—533S; from 1976–1978, these rules were stated in §§ 2195—2166. The present rules are contained in §§ 748—755. We have held that our provisions are substantially patterned on those of the federal Jencks Act, 18 U.S.C. § 3500; *State* v. *Shaw*, 185 Conn. 372, 385–86, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982). The federal law under the Jencks Act is comprehensively described in 2 Wright, Federal Practice and Procedure (1969), Criminal § 417.

[4] "[Practice Book] Sec. 752. —— ——PRODUCTION FOLLOWING TESTIMONY. After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

[5] "[Practice Book] Sec. 753. —— ——DELIVERY AND EXCISION OF STATEMENTS. If the entire contents of a statement requested under

Book, after a witness has testified for the state, "the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness," unless the prosecuting authority claims that the statement "contains matter which does not relate to the subject matter of the testimony of the witness . . . ." In that event, "the judicial authority shall order the prosecuting authority to deliver such statement for the inspection of the judicial authority in camera." These provisions, repeatedly employing the word "shall," are mandatory. We have held that they are available to criminal defendants as a matter of right. *State* v. *Villafane*, 171 Conn. 644, 668, 372 A.2d 82, cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1976).[6] The judicial author-

---

Sec. 752 relate to the subject matter of the testimony of the witness, the judicial authority shall order the statement to be delivered directly to the defendant or his counsel for his examination and use. If the prosecuting authority claims that any statement ordered to be produced under Sec. 751 contains matter which does not relate to the subject matter of the testimony of the witness, the judicial authority shall order the prosecuting authority to deliver such statement for the inspection of the judicial authority in camera. Upon such delivery, the judicial authority shall not disclose that portion of such statement which does not relate to the subject matter of the testimony of the witness. With such material excised or obliterated, the judicial authority shall then direct delivery of such statement to the defendant or his counsel for his use. If, pursuant to this procedure, any portion of such statement is withheld from the defendant or his counsel and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be sealed and preserved as an exhibit in the case, and, in the event that the defendant appeals, it shall be made available to the appellate court and, unless for good cause the trial court orders otherwise, to counsel for the parties for the purpose of determining the correctness of the ruling of the judicial authority."

[6] The federal courts have similarly found the Jencks Act to impose an affirmative duty on the trial judge. *Campbell* v. *United States*, 365 U.S. 85, 95, 81 S. Ct. 421, 5 L. Ed. 2d 428 (1961); *Palermo* v. *United States*, 360 U.S. 343, 354–55, 79 S. Ct. 1217, 3 L. Ed. 2d 1287

ity is obligated, by these provisions, to honor a defense request for inspection of the statement of a state's witness and to order the statement sealed as an exhibit if the court decides to withhold portions thereof as unrelated to the witness' testimony.

The state does not take issue with these principles but argues that they are inapplicable in the present case. The state's first contention is that the defendant failed to make a proper request for Colon's statement because the defendant's request did not cite the relevant sections of the Practice Book. While we can imagine circumstances where such an omission might cause confusion, the present record demonstrates no misunderstanding about what the defendant was seeking and why. Throughout the trial, the state had routinely honored defense requests for the statements of other state witnesses after they had testified. The state expressly acquiesced in the proposal for a judicial inspection, in camera, of the Colon statement. The trial court was informed that the defendant needed the Colon statement for the purpose of a full cross-examination. It premised its rejection of the defendant's request not on its uncertainty about what the defendant sought but on its acceptance of the accuracy of the representations made by the prosecuting authority. In these circumstances, it would be elevating form over substance to conclude that the defendant had not made a proper request for an in camera inspection simply because he had omitted mention of §§ 752 and 753. See *Hill* v. *United States*, 401 F.2d 995, 996 (9th Cir. 1968).

(1959); *United States* v. *Conroy*, 589 F.2d 1258, 1272–73 (5th Cir. 1979); *United States* v. *Chitwood*, 457 F.2d 676, 678 (6th Cir.), cert. denied, 409 U.S. 858, 93 S. Ct. 141, 34 L. Ed. 2d 103 (1972); *United States* v. *O'Brien*, 444 F.2d 1082, 1086–87 (7th Cir. 1971).

The state's second contention is equally formalistic. The state maintains that the § 753 provision for an in camera inspection only comes into play after production of a statement has been ordered. The state envisages a mandatory two step process: (1) upon the defendant's motion, the judicial authority must order a statement to be produced; (2) once that order has been entered, the state may claim its right of limited nondisclosure and the judicial authority must then inspect the disputed statement in camera. The state offers no reason of policy why the rules may not be flexibly interpreted to permit the judicial authority to proceed to an in camera inspection without a prior order formally adjudicating the propriety of production of the disputed statement. A two step process may be required in some circumstances, as for example if there is a contest about whether a particular document qualifies as a statement under the terms of § 749 and whether therefore it needs to be produced at all. Whether there was a proper order was the issue in *State* v. *DellaCamera,* 166 Conn. 557, 562–63, 353 A.2d 750 (1974), on which the state relies, for there the statutory requirement about production of statements was at the crux of the litigation. In the present case, however, the state has never denied that Colon's statement falls within the definition of "statement" in § 749. The trial court's reliance on the representations of the prosecuting authority can only be understood as an implied holding that, but for the statement's allegedly extraneous contents, it would have been ordered produced for the defendant's use.

The state next argues that the trial court substantially complied with the requirements of the Practice Book by holding a hearing and permitting

extensive cross-examination of Colon. This argument mistakes the import of the requirement for an in camera inspection. The purpose of that inspection is to permit the court to exercise its own judgment on the question of whether a portion of the disputed statement may be suppressed because it "does not relate to the subject matter of the testimony of the witness." It is no reflection on the good faith of prosecuting attorneys to observe that their judgment about what "relates" may be colored by their role in the trial process. The provision for in camera inspection is, by the express terms of § 753, mandatory. Although a hearing may well be desirable to inform the trial court about the judgment it must make, a hearing cannot displace the rule's requirement for an independent in camera inspection of the whole statement by the court.

Until the Colon statement is inspected by the court, the state's final argument must also fail. Whether the defendant was prejudiced by not having access to the whole Colon statement cannot be determined by speculation about what that statement contains. Nor may we speculate as to whether the jury would have convicted the defendant had the Colon testimony been stricken if the state had elected to refuse to produce the statement. This is not, on the present record, a case of harmless error.

The trial court's error in failing to inspect the whole Colon statement does not, however, require us to set aside the judgment that has been rendered. We assume that the Colon statement is still in the hands of the prosecuting authority. On that assump-

tion, the case is remanded to the judge who presided at the trial so that he can now conduct the in camera inspection required by § 753.[7]

After inspection of the Colon statement, the trial judge must resolve one or possibly two questions. He must first determine whether any undisclosed portion of the Colon statement contains material which relates to the subject matter of Colon's direct testimony. If some portion of the statement contains material which ought to have been disclosed, he must determine whether the error was harmful because the defense was prejudiced by failing to gain access to this undisclosed material.[8] A new trial must be ordered if both of these questions are answered in the affirmative; otherwise the statement must be sealed and preserved as an exhibit to enable the defendant, if he wishes, to seek further judicial review.[9]

The case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

---

[7] Although General Statutes § 51-183c ordinarily requires that, upon a retrial, a different judge shall preside, that statute is inapplicable here, where the purpose of the remand is not to correct error but to determine whether error has occurred.

[8] Since access to the statements of witnesses for the prosecuting authority is not a constitutional right; *United States* v. *Augenblick*, 393 U.S. 348, 356, 89 S. Ct. 528, 21 L. Ed. 2d 537 (1969), on remand, 509 F.2d 1157 (Ct. Cl.), cert. denied, 422 U.S. 1007, 95 S. Ct. 2628, 45 L. Ed. 2d 669 (1975); *State* v. *Pikul*, 150 Conn. 195, 202, 187 A.2d 442 (1962); the burden of showing prejudice rests on the defense. *State* v. *Cooper*, 182 Conn. 207, 212, 438 A.2d 418 (1980).

[9] Our remand comports with the procedure set out in *Goldberg* v. *United States*, 425 U.S. 94, 111–12, 96 S. Ct. 1338, 47 L. Ed. 2d 603 (1976). See also *United States* v. *Peters*, 625 F.2d 366, 371 (10th Cir. 1980).