******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LYME LAND CONSERVATION TRUST, INC. *v.*
# BEVERLY PLATNER ET AL.
## (SC 20071)

Robinson, C. J., and Palmer, McDonald,
Mullins, Kahn and Ecker, Js.

*Syllabus*

Pursuant to statute (§ 51-183c), a judge who has tried a case without a jury in which a new trial is granted, or in which the judgment is reversed by the Supreme Court, may not again try the case.

The defendant property owner appealed from the trial court's judgment rendered following a hearing in damages that was held on remand in connection with the plaintiff conservation trust's claim that the defendant had wilfully violated a conservation easement in contravention of the statute (§ 52-560a [b]) prohibiting encroachment on such an easement. After a trial to the court, which found that the defendant had violated the easement, the court ordered the defendant to restore the property to its prior condition in accordance with a plan proposed by the plaintiff's expert at a cost of approximately $100,000. The court also awarded the plaintiff $350,000 in punitive damages pursuant to § 52-560a (d), which permits damages of up to five times the cost of restoration, and ordered further hearings to address the specific manner and timing of implementation of the restoration plan. At a subsequent hearing, at which experts for both parties proposed differing courses of action to effectuate restoration, the trial court ordered a new restoration plan but did not take evidence as to the cost of the new restoration plan or revisit its punitive damages award. The defendant thereafter appealed, and this court concluded that, although the trial court had properly found that the defendant violated the easement and that the new restoration plan was authorized and supported by sufficient evidence, the trial court's punitive damages award under § 52-560a (d) lacked the requisite evidentiary foundation. Specifically, that award had been compliant with § 52-560a (d) at the time it was initially issued, as it was based on evidence that restoration costs would be approximately $100,000, but, when the trial court adopted the new restoration plan with no evidence of its cost, the ratio of actual damages to punitive damages could not be determined. Accordingly, this court reversed the trial court's judgment as to damages and remanded the case to the trial court with direction to take evidence as to the cost of the new plan to fashion a new damages award that was within the framework of § 52-560a (d). On remand, the defendant filed a motion to disqualify the trial judge, K, from further participation in the proceedings pursuant to § 51-183c, which K denied. K concluded that he was not disqualified because this court had not ordered a new trial but reversed only a portion of the trial court's judgment and remanded on two precise matters, affirming the judgment in all other respects. K also denied the defendant's motions to open the judgment and to allow new evidence regarding the implementation of the restoration plan, and, after the parties presented expert testimony as to the cost of the new restoration plan, K found that its cost was $242,244 and again awarded $350,000 in punitive damages. On the defendant's appeal, *held*:

1. K was required to disqualify himself from the proceedings held on remand after the first appeal, this court having determined that its decision in the first appeal reversing the trial court's judgment in part and remanding the case to the trial court with direction to take evidence and to recalculate damages fell within the ambit of § 51-183c and, therefore, required a different trial judge to preside over the case on remand: this court construed § 51-183c in a manner to advance its policy of requiring the disqualification of a judge in order to protect against a lack of impartiality or an appearance thereof and concluded that § 51-183c was applicable when a judgment is reversed in part and fewer than all of the issues must be retried, including situations, such as in the present case, in which the judgment is reversed as to damages and remanded for a new trial only on the issue of damages; accordingly, the trial court's judgment

was reversed with respect to the award of damages, and the case was remanded for a recalculation of damages, before a different judge, consistent with this court's opinion in the first appeal.

2. This court declined to address the defendant's claims that K improperly denied her motions to open the judgment and to allow new evidence and improperly awarded the plaintiff $350,000 in punitive damages on the ground that the plaintiff failed to prove the cost of the new restoration plan, as those claims could not be analyzed or adjudicated independently of the disqualification issue because they emanated from rulings that resulted from the same trial judge's improper presiding over the proceedings on remand; a new judge on remand will make his or her own determinations regarding the merits of the motion to open and what evidence will or may be submitted in support of the claims and defenses raised by the parties, and the plaintiff may adopt a different litigation strategy involving different evidence on remand.

Argued May 2—officially released December 31, 2019

*Procedural History*

Action to enjoin the named defendant from violating certain conservation restrictions on certain of the named defendant's real property, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Cosgrove, J.*, granted the plaintiff's motion to withdraw the complaint as to the defendant Joseph G. Standart III et al. and to withdraw the claim for a declaratory judgment; thereafter, the court, *Devine, J.*, granted the motion of the attorney general to intervene as a plaintiff; subsequently, the intervening plaintiff filed a complaint, and the named defendant filed counterclaims as to the plaintiff's second amended complaint and the intervening plaintiff's complaint; thereafter, the case was tried to the court, *Hon. Joseph Q. Koletsky*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment for the plaintiff and for the intervening plaintiff on their complaints and on the named defendant's counterclaims, from which the named defendant appealed; subsequently, the court, *Hon. Joseph Q. Koletsky*, judge trial referee, issued certain orders as to the injunctive relief granted, and the named defendant filed an amended appeal; thereafter, this court reversed in part the judgment of the trial court and remanded the case to that court with direction to recalculate the award of attorney's fees and damages; subsequently, the court, *Hon. Joseph Q. Koletsky*, judge trial referee, denied the named defendant's motions to disqualify, to open the judgment, and to allow evidence; thereafter, the court, *Hon. Joseph Q. Koletsky*, judge trial referee, issued certain orders, and the named defendant appealed. *Reversed in part; vacated in part; further proceedings.*

*Wesley W. Horton*, with whom were *Brendon P. Levesque* and, on the brief, *Kari L. Olson* and *Janet P. Brooks*, for the appellant (named defendant).

*John F. Pritchard*, pro hac vice, with whom were *Tracy M. Collins* and *Timothy D. Bleasdale*, and, on the brief, *Edward B. O'Connell*, for the appellee (named plaintiff).

*Opinion*

McDONALD, J. General Statutes § 51-183c precludes a judge who tried a case without a jury from trying the case again after a reviewing court reverses the judgment. The dispositive issue in this appeal is whether that statute applies when this court reverses the trial court's judgment as to damages only and remands the case to the trial court to take new evidence and recalculate damages.

The defendant Beverly Platner[1] appeals from the judgment of the trial court, rendered following our reversal in part and remand in *Lyme Land Conservation Trust, Inc.* v. *Platner*, 325 Conn. 737, 159 A.3d 666 (2017), for further proceedings on the issue of damages. The defendant challenges the judgment as to both the damages awarded to the plaintiff, Lyme Land Conservation Trust, Inc.,[2] and injunctive relief directing the defendant to remedy a violation of a conservation restriction on her property pursuant to a restoration plan ordered by the trial court. The defendant claims that the trial judge improperly denied her motion to disqualify himself from retrying the damages issue, and, as a result, both the damages award and injunction were improper. We agree with the defendant on the issue of disqualification and reverse the trial court's judgment as to damages and remand for new proceedings before a new judge consistent with our original remand order.

Our prior decision in this case and the record of the subsequent proceedings provide the following relevant facts and procedural history for the resolution of this appeal.[3] The defendant has owned 66 Selden Road in Lyme (property) since 2007. Id., 741. The plaintiff holds a conservation restriction (easement) on the property, which, consistent with General Statutes § 47-42a (a),[4] prohibits the defendant from making certain changes to the property that would disturb its " 'natural . . . condition' . . . ." Id., 741–42. Approximately 14.3 of the property's 18.7 acres are subject to the easement. Id., 742. This protected area includes a large meadow and a smaller woodlands area. Id.

In 2007, the defendant began making a series of changes to the protected area, despite the plaintiff's efforts to persuade the defendant that the changes violated the easement. With respect to the meadow, those changes included: regular mowing; installing an irrigation system; adding top soil; aerating; planting seed for grass typical of a residential lawn; applying lime, fertilizers, fungicides, herbicides, and pesticides; and removing "truckloads of grass and soil" to create " 'tree rings' " where the defendant planted ornamental shrubs, plants, and flowers. Id., 743. As a result, the previously existing native grasses were eradicated. Id. In the woodlands, the defendant began mowing the understory—the plants that grow on a forest floor. Id.

and n.6.

In 2009, the plaintiff filed this action, alleging in the operative complaint that the foregoing activities were actual or intentional violations of the easement and constituted a willful violation of General Statutes § 52-560a. Id., 743–44. The plaintiff sought injunctive relief to prevent further violations of the easement and to require restoration of the property to its prior condition, as well as statutory punitive damages and attorney's fees under § 52-560a. Id., 744.

The case was tried to the court, *Hon. Joseph Q. Koletsky*, judge trial referee. The court held that the defendant had not merely violated the easement but had "completely subvert[ed] and eviscerate[d] the clear purpose of the conservation restriction" by "wilful[ly] . . . caus[ing] great damage to the protected area's natural condition" and had "destroyed considerable [and diverse] vegetation . . . ." (Internal quotation marks omitted.) Id., 745. The court issued an injunction, requiring the defendant to restore the property to its prior condition. Id., 744–45. The court's initial restoration plan (plan one), which was developed by the plaintiff's expert witness, called for, among other things, the defendant to remove the irrigation system from the meadow and remove the lawn by means of a sod cutter. Id., 762. The defendant would then replant the soil with a variety of native grasses and mow only infrequently. Id. As to the woodlands, the defendant was required to plant native shrubs and to stop mowing altogether, allowing the understory to reestablish itself naturally. Id. The plaintiff's expert estimated that plan one would cost approximately $100,000. Id.

The court awarded the plaintiff $350,000 in punitive damages pursuant to § 52-560a (d), which permits the court to award damages of up to five times the " 'cost of restoration' " for violations of a conservation restriction. Id., 762 and n.17. The court also ordered further hearings to address the specific manner and timing of implementing plan one. Id., 763.

At the subsequent hearing regarding implementation, experts for both parties proposed differing courses of action to effectuate the restoration. Id., 763. The court ultimately ordered a new plan (plan two), which was a hybrid of the competing approaches proposed by the parties. Id. Instead of removing the lawn with a sod cutter, the court ordered the defendant to plant plugs of native grasses that would overtake the nonnative species. Id. The court asked the parties to submit specific planting proposals to execute this new strategy, and after the parties did so, the court ordered the defendant to follow the proposal submitted by the plaintiff. Id. Although the court changed what would be required of the defendant to achieve restoration from plan one to plan two, it did not take evidence as to the cost of plan two or revisit its award of $350,000 in punitive

damages, which was based on plan one. Id. The defendant appealed from the judgment of the trial court to the Appellate Court, and the appeal was transferred to this court. Id., 746 n.9.

In that appeal, the defendant claimed, among other things, that the trial court improperly (1) found that the defendant had violated the easement, and (2) ordered relief that was either legally unauthorized or lacking in evidentiary support. Id., 741. We concluded that the trial court had properly found that the defendant violated the easement and that the restoration plan that the court ordered was authorized and supported by sufficient evidence. Id., 764–65. We agreed with the defendant, however, that the trial judge improperly awarded damages under § 52-560a (d) without the requisite evidentiary foundation. We concluded that "the trial court's damages award . . . was compliant with § 52-560a (d) at the time it initially was issued. . . . [T]he award was anchored in the evidence that restoration costs would be $100,000 or more and, accordingly, did not run afoul of the statutory maximum ratio of punitive damages to actual damages. When the court later adopted a different restoration plan, however, with no evidence of its cost, its earlier award lost its mooring and the ratio of punitive damages to actual damages became unknown. If the restoration plan ultimately ordered by the court costs less than $70,000 to implement, the court's award of $350,000 would include a punitive portion that exceeds the fivefold maximum authorized by § 52-560a (d). *Upon remand, the trial court should take evidence as to the cost of the plan that it ordered and fashion a new damages award that is within the statutory parameters.*" (Emphasis added.) Id., 764. The rescript to our opinion ordered as follows: "The judgment *is reversed as to the award of . . . damages* pursuant to § 52-560a (d), and *the case is remanded for a recalculation of . . . damages consistent with this opinion*; the judgment is affirmed in all other respects."[5] (Emphasis added.) Id., 765.

On remand, the defendant filed a motion to disqualify Judge Koletsky from further participation in the proceedings pursuant to § 51-183c and Practice Book § 1-22.[6] Judge Koletsky summarily denied the motion. In a subsequent articulation, he offered the following reason for denying the motion: "Because the Supreme Court did not order a new trial but rather reversed only certain portions of the judgment and remanded for [a] hearing on two precise matters, affirming the judgment in all other respects, the court concluded it was not disqualified from hearing the matter."

After her motion to disqualify was denied, the defendant moved to open the judgment and to allow evidence regarding plan two. She asserted that plan two was no longer necessary or workable because the property had restored itself naturally in the three growing seasons

that had passed since the trial court's order. Judge Koletsky denied both motions.

In subsequent proceedings before Judge Koletsky on the issue of statutory punitive damages, both parties presented expert testimony as to the cost of plan two. Judge Koletsky found that the cost of plan two was $242,244 and set punitive damages at $350,000, the same amount he had awarded previously. This appeal followed.[7]

The defendant raises three issues in this appeal. First, she claims that the trial court improperly denied her disqualification motion because § 51-183c and Practice Book § 1-22 precluded Judge Koletsky from retrying the issue of damages after our reversal in part and remand in her first appeal. Second, the defendant claims that the trial court improperly denied her motion to open the judgment because it was an abuse of discretion to implement, in 2017, a restoration plan that was based on the property's 2015 condition without considering how the property had changed in the intervening two years. Third, the defendant claims that the trial court improperly awarded the plaintiff $350,000 in damages because, on remand, the plaintiff failed to meet its burden of proving the "cost of restoration" as required for a damages award under § 52-560a. We agree with the defendant that Judge Koletsky was required to disqualify himself under § 51-183c. In light of this conclusion, we do not reach the other issues.

I

The defendant contends that our decision and direction to the trial court in her first appeal brings the remand proceeding within the scope of § 51-183c and therefore required a different trial judge to preside over the case on remand. We agree.

Whether § 51-183c requires a judge to be disqualified in circumstances such as these is a matter of statutory construction over which we exercise plenary review. See, e.g., *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, 285 Conn. 381, 422–23, 941 A.2d 868 (2008). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its

enactment, [including] the legislative policy it was designed to implement . . . ." (Internal quotation marks omitted.) *Smith* v. *Rudolph*, 330 Conn. 138, 143, 191 A.3d 992 (2018).

Section 51-183c is one of several provisions in our law that dictates when a judge must be disqualified to protect against a lack of impartiality or the appearance thereof, unless the parties otherwise consent. See, e.g., General Statutes §§ 51-39, 51-183h and 54-33f (a); Code of Judicial Conduct, Canon 2.11; *State* v. *Shabazz*, 246 Conn. 746, 768–69, 719 A.2d 440 (1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999); see also *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 527–28, 911 A.2d 712 (2006) ("the appearance and the existence of impartiality are both essential elements of a fair exercise of judicial authority" [internal quotation marks omitted]). Section 51-183c addresses this concern in a particular context, providing in relevant part: "No judge of any court who tried a case without a jury in which a new trial is granted, or *in which the judgment is reversed by the Supreme Court, may again try the case.* . . ." (Emphasis added.)

Neither party expressly addresses whether § 51-183c is ambiguous.[8] Unlike the trial court's position, which rested on a categorical interpretation of the statute—that a partial reversal falls outside the statute's scope—the parties' arguments focus on whether the statute applies under the particular facts of this case. They offer competing positions on whether our decision in the first appeal resulted in a "reversal" of the judgment and whether the remand ordered a new trial (i.e., "again try the case"). The defendant argues that the first appeal "clearly was a reversal and there clearly was an order to take evidence. That is what trials are for." The plaintiff argues that the first appeal did not result in a reversal and that the remand was not for a trial because we remanded not to correct an error of the trial court but only for further fact-finding to determine whether an error had occurred. We agree with the defendant.

The first question that arises is whether § 51-183c applies when we reverse a judgment in part and remand the case to the trial court for reconsideration of fewer than all of the issues in the case. This appears to be the consideration that led the trial court to deny the motion to disqualify. Because § 51-183c refers to "the judgment" and retrial of "the case"—not reversal of "any part of the judgment" and retrial of "any issue in the case"—it could be read to apply only when this court reverses the judgment in its entirety and orders a new disposition of all of the legal claims between the parties. Such a construction, though plausible, plainly would not serve the clear purpose of the statute. There is no logical basis to distinguish disqualification concerns that might arise from a judge's retrying a case in which the judgment was reversed as to *all* of the claims

and, for example, an appellate reversal requiring retrial on *all but one* of the claims, or a reversal as to all of the claims tried to the court but not those tried to the jury.[9] In the absence of legislative history supporting such a counterintuitive result, we interpret the statute in a manner to advance the policy it is intended to effectuate. See *State* v. *Scott*, 191 Conn. App. 315, 356, 214 A.3d 871 (2019) ("the concern present in these situations [is that] '[s]ome may argue that a judge will feel the motivation to vindicate a prior conclusion when confronted with a question for the second or third time'" [internal quotation marks omitted]) (quoting *Liteky* v. *United States*, 510 U.S. 540, 562, 114 S. Ct. 1147, 127 L. Ed. 2d 474 [1994] [Kennedy, J., concurring in the judgment]), cert. denied, 333 Conn. 917, 216 A.3d 651 (2019). The Appellate Court has previously recognized as much. See *Barlow* v. *Commissioner of Correction*, 166 Conn. App. 408, 423–24, 142 A.3d 290 (rejecting argument that § 51-183c did not apply because rescript stated habeas court's judgment was "'reversed in part'"), appeal dismissed, 328 Conn. 610, 182 A.3d 78 (2018); see also *Rosato* v. *Rosato*, 255 Conn. 412, 425 n.18, 766 A.2d 429 (2001) (applying § 51-183c in case in which this court had reversed judgment only with respect to financial orders in dissolution action and remanded for hearing to resolve questions about party's pension).

Given our conclusion that § 51-183c applies when a judgment is reversed in part and fewer than all of the issues in the case must be retried, we next consider whether reversing the judgment in part for a new proceeding only as to damages falls within that description. To try a case, or to conduct a "trial," is defined as "[a] formal judicial examination of evidence and determination of legal claims in an adversary proceeding." Black's Law Dictionary (11th Ed. 2019) p. 1812; see also 75 Am. Jur. 2d 205, Trial § 1 (2018) ("the judicial investigation and determination of the issues between the parties to an action"). The mechanism of a bifurcated trial is well established in the law; see General Statutes § 52-205; and has long been understood to include a "trial" in which one stage determines liability and the other stage determines damages.[10] See, e.g., *Hall* v. *Burns*, 213 Conn. 446, 483, 569 A.2d 10 (1990) (involving bifurcated trial on issues of liability and damages); *Lamb* v. *Burns*, 202 Conn. 158, 159, 520 A.2d 190 (1987) (same); *O'Shea* v. *Mignone*, 50 Conn. App. 577, 582, 719 A.2d 1176 (same), cert. denied, 247 Conn. 941, 723 A.2d 319 (1998); American Law of Product Liability (3d Ed. Rev. 2019) § 51:99 (addressing separate "trial" for damages); Black's Law Dictionary, supra, p. 1812 (defining bifurcated trial as "[a] trial that is divided into two stages, such as for guilt and punishment or for liability and damages"). In some cases, the issue of liability is not in dispute, and the only issue being tried is damages. On remand for a new trial after appeal, a new trial could

be ordered solely on the issue of damages. See, e.g., *Peck* v. *Jacquemin*, 196 Conn. 53, 73, 491 A.2d 1043 (1985) (ordering "new trial" limited to issue of damages); *Smith* v. *Whittlesey*, 79 Conn. 189, 193–94, 63 A. 1085 (1906) (same). A trial in damages, sometimes known in this state as a hearing in damages, has all the hallmarks of a trial, including taking evidence, examining witnesses, finding facts, and applying the law to those facts. See Practice Book §§ 17-34 through 17-40. Moreover, because a determination of damages is an integral part of a trial, there is no appealable final judgment until damages have been determined. See *Hylton* v. *Gunter*, 313 Conn. 472, 478, 97 A.3d 970 (2014) ("[i]t is well settled that a 'judgment rendered only upon the issue of liability without an award of damages is . . . not a final judgment from which an appeal lies' ").

Having concluded that a judgment that is reversed as to damages and remanded for a new trial only on the issue of damages falls within the scope of § 51-183c, we next consider whether our reversal in part and remand to the trial court in the first appeal in this case meets these criteria. We conclude that they do.

Our rescript in the first appeal provided unequivocally: "The judgment is *reversed* as to . . . damages pursuant to § 52-560a (d), and the case is remanded for a recalculation of . . . damages consistent with this opinion; the judgment is affirmed in all other respects." (Emphasis added.) *Lyme Land Conservation Trust, Inc.* v. *Platner*, supra, 325 Conn. 765. This direction plainly constituted a reversal in part of the judgment, limited to the trial court's damages award.

Our order also plainly indicated that the remand proceeding would constitute a trial in damages. The rescript called for a remand for a recalculation of damages "consistent with this opinion"—that is, consistent with our prior statements that "the court's award of statutory damages was not compliant with § 52-560a (d) and must be recomputed based on the costs of the actual restoration plan ordered"; id.; and that, "[u]pon remand, the trial court should *take evidence* as to the cost of the plan that it ordered and *fashion a new damages award* that is within the statutory parameters." (Emphasis added.) Id., 764.

What took place at the remand proceeding before Judge Koletsky, moreover, clearly was a trial in damages. Both parties put on expert witnesses—Pennington Marchael for the plaintiff and Michael S. Klein for the defendant. The plaintiff conducted a direct examination of Marchael, in which the expert described in detail each of the restoration procedures and how much they would cost, ultimately opining that the cost of restoration would be $242,244. The defendant then cross-examined Marchael, challenging his level of expertise, bases for and methods of calculations, and conclusion. After unsuccessfully moving to dismiss the case, the defen-

dant presented its own evidence through its expert, Klein. The court took evidence, and the parties objected to the admission of certain testimony and documentary exhibits.

The court, acting as fact finder, credited Marchael's testimony and found that the cost of restoration was $242,244. Mindful that § 52-560a limits punitive damages to five times the cost of restoration, the court then directed counsel to determine "a multiplier that transfers $242,244 to [$350,000] . . . to the extent that the statute requires a multiplier . . . ." Having set punitive damages at $350,000, the court then opined that "everybody's got all the final judgments that they need" for any further appellate review. In short, the proceeding had all of the hallmarks of a trial in damages.

The plaintiff, however, correctly notes that one way a reviewing court "may remand a case to the original trial judge for additional proceedings without either triggering § 51-183c or a dispute over its application is by not disturbing the original judgment in any way and making clear that the remand is for the purpose of further factual findings." *Barlow* v. *Commissioner of Correction*, 328 Conn. 610, 614, 182 A.3d 78 (2018). This circumstance typically arises where "the purpose of the remand is not to correct error but to determine whether error has occurred." *State* v. *Gonzales*, 186 Conn. 426, 436 n.7, 441 A.2d 852 (1982). The plaintiff argues that the remand ordered in the defendant's first appeal reflects such a purpose because our rescript, read in the context of the broader opinion, reveals that our reversal "is more properly understood as placing the award in limbo pending collection of limited additional evidence" to determine whether the damages award needed to be adjusted to conform with § 52-560a (d). We disagree.

In our decision in the first appeal, we determined that "the court's award of statutory damages *was not compliant* with § 52-560a (d) and *must be recomputed* based on the costs of the actual restoration plan ordered." (Emphasis added.) *Lyme Land Conservation Trust, Inc.* v. *Platner*, supra, 325 Conn. 765. We directed the trial court to "*take evidence* as to the cost of the plan that it ordered and *fashion a new damages award* that is within the statutory parameters." (Emphasis added.) Id., 764. This holding unambiguously requires a new trial in damages and plainly contemplates a new judgment that will include the recomputed restoration costs and an award of punitive damages compliant with § 52-560a (d).

The plaintiff contends, however, that we "required the trial court's original damages award to be 'refashioned' *only if* the new evidence established that the cost of the restoration plan would be less than $70,000." (Emphasis added.) It points to our statement that, "[i]f the restoration plan . . . costs less than $70,000 . . . the . . . $350,000 would . . . [exceed] the fivefold

maximum authorized by § 52-560a (d)" as demonstrating our recognition of the possibility that no error would exist as long as the plan cost at least $70,000. In doing so, the plaintiff mischaracterizes our use of the word "if" and ignores our determination that there was no evidence to support the award. *Lyme Land Conservation Trust, Inc.* v. *Platner*, supra, 325 Conn. 764. If, on remand, the court were to determine that the cost of plan two exceeds $70,000—and thus the original $350,000 would have fallen within the permissible range of the statutory multiplier—it would not make it any less of an error for the trial court to have previously entered the damages award without having taken evidence to support the order. The trial court's damages award was not legally sound because there was no evidence in the record establishing the cost of plan two.

Finally, the rescript in the first appeal, which explicitly reversed the damages award, is materially different from rescripts in which we have remanded a case to determine whether an error occurred. See, e.g., *Holland* v. *Holland*, 188 Conn. 354, 364 and n.6, 449 A.2d 1010 (1982) (§ 51-183c is not implicated by rescript "remand[ing] [the] case for the submission of additional evidence by the parties and for a fully articulated memorandum of decision"); see also *State* v. *Gonzales*, supra, 186 Conn. 436 ("A new trial must be ordered if [two] questions are answered in the affirmative; otherwise the statement must be sealed and preserved as an exhibit to enable the defendant, if he wishes, to seek further judicial review. The case is remanded for further proceedings in accordance with this opinion.").

Our prior decision reversing the judgment in part and remanding to the trial court to take evidence and to recalculate damages falls within the ambit of § 51-183c. Accordingly, Judge Koletsky was required to disqualify himself on remand after the first appeal.

II

Although this conclusion would appear to dispose of the defendant's remaining claims because a new trial in damages must be held by a different judge, the defendant contends this is not the case. First, the defendant claims that Judge Koletsky improperly denied her motion to open the judgment because it was an abuse of discretion to implement, in 2017, a restoration plan that was based on the property's 2015 condition without considering how the property had changed in the intervening two years. Second, the defendant claims that Judge Koletsky improperly awarded $350,000 in damages on remand because the statutory multiplier under § 52-560a applies only to the cost of "restoration" but plan two includes remedial requirements that do not restore the property to its prior condition, and the plaintiff did not put on any evidence on remand as to how much of the total cost of plan two was for "resto-

ration."

The defendant's claims in this regard cannot be analyzed or adjudicated independently of the disqualification issue because they "emanate from rulings that resulted from the same trial court improperly presiding over [the proceedings] on remand." *Gagne* v. *Vaccaro*, 133 Conn. App. 431, 433 n.2, 35 A.3d 380 (2012), rev'd on other grounds, 311 Conn. 649, 658, 90 A.3d 196 (2014). At oral argument, the defendant conceded that, if we were to conclude that Judge Koletsky should have been disqualified, "the only reason" we would reach the issue regarding the motion to open is if we "think [the defendant's case for opening the judgment] was so strong that the motion had to be granted." In other words, it would not matter that Judge Koletsky should have been disqualified because no reasonable judge could have denied the motion to open. We are not persuaded by this argument for several reasons. It would be illogical for us to decide whether to address an issue by deciding the merits of the issue. Moreover, given the wealth of reasons set forth in the plaintiff's opposition to the motion to open—procedural, substantive, and equitable—we are not prepared to conclude that none of these reasons could ever provide a reasonable basis for denying the motion.

With respect to her second remand related claim, the defendant's contention essentially is that the plaintiff failed to meet its burden of proof to support any damages award above the statutory minimum of $5000. The defendant asserts that we must reach this issue because, if we were to agree with her, we would not order a new trial but, rather, would direct that judgment be rendered for the statutory minimum.

This argument ignores the fact that a new judge at a new trial will make his or her own decisions as to what evidence will or may be submitted in support of the claims and defenses raised by the parties. Nor does it take into account that the plaintiff might adopt a different litigation strategy involving different evidence. We will not predict what will happen at a trial yet to occur.

The judgment is reversed with respect to the award of damages and the case is remanded for a recalculation of damages, before a different judge, consistent with this court's prior opinion, and the orders denying the defendant's motions to open the judgment and to allow evidence are vacated; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.

[1] Joseph G. Standart and Clinton S. Standart were also named as defendants in the original complaint. The complaint was subsequently withdrawn as to those defendants, and all references to the defendant in this opinion are to Platner.

[2] The attorney general intervened as an additional plaintiff in the original trial and appeal to represent the public's interest in a conservation restriction on the defendant's property. See *Lyme Land Conservation Trust, Inc.* v.

*Platner*, supra, 325 Conn. 740 n.2. The attorney general did not participate in the remand proceedings, and, because this appeal concerns only the issues on remand, the attorney general did not participate in this appeal.

[3] A detailed account of the facts is set forth in our prior decision. See *Lyme Land Conservation Trust, Inc.* v. *Platner*, supra, 325 Conn. 741–46.

[4] General Statutes § 47-42a (a) provides in relevant part: " 'Conservation restriction' means a limitation, whether or not stated in the form of a restriction, easement, covenant or condition, in any deed, will or other instrument executed by or on behalf of the owner of the land described therein . . . whose purpose is to retain land or water areas predominantly in their natural, scenic or open condition or in agricultural, farming, forest or open space use."

[5] We also reversed and remanded the trial court's award of attorney's fees. See *Lyme Land Conservation Trust, Inc.* v. *Platner*, supra, 325 Conn. 765. In her brief to this court, the defendant concedes that orders for "attorney's fees, a bill of costs, and postjudgment interest" entered by Judge Koletsky are not at issue in this appeal.

[6] Practice Book § 1-22 (a) provides in relevant part: "A judicial authority shall, upon motion of either party or upon its own motion, be disqualified from acting in a matter if . . . the judicial authority previously tried the same matter and a new trial was granted therein or because the judgment was reversed on appeal. . . ."

[7] The defendant appealed from the judgment of the trial court to the Appellate Court, and the appeal was transferred to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[8] The plaintiff has cited to Appellate Court cases concluding that § 51-183c unambiguously applies exclusively to trials and not to all types of adversarial proceedings. See *Barlow* v. *Commissioner of Correction*, 166 Conn. App. 408, 423, 142 A.3d 290 (2016), appeal dismissed, 328 Conn. 610, 182 A.3d 78 (2018); *Board of Education* v. *East Haven Education Assn.*, 66 Conn. App. 202, 216, 784 A.2d 958 (2001); *Lafayette Bank & Trust Co.* v. *Szentkuti*, 27 Conn. App. 15, 19, 603 A.2d 1215 (1991), cert. denied, 222 Conn. 901, 606 A.2d 1327 (1992). Those cases have no bearing on the question before us in the present case, which, for the reasons set forth in this opinion, involves a materially different procedure on remand.

[9] See, e.g., *Steiner* v. *Bran Park Associates*, 216 Conn. 419, 420 and n.1, 582 A.2d 173 (1990) (trial court bifurcated legal claim and equitable claims, former to be tried to jury and latter to be tried to court); *Dick* v. *Dick*, 167 Conn. 210, 211–12, 355 A.2d 110 (1974) (trial court ordered bifurcated trial in which issue of authenticity of defendant's signature to agreement was tried to jury and remaining equitable issues were tried to court).

[10] We are mindful that a criminal trial also may be bifurcated as to guilt and punishment, and we have concluded that a remand for resentencing is not part of a "trial" under § 51-183c. This court reached that conclusion, however, in reliance on a clear indication of legislative intent that is not applicable to damages. Specifically, the court looked to other provisions in the law from which it concluded that the legislature had demonstrated a clear intent that sentencing did not fall within the ambit of § 51-183c. See *State* v. *Miranda*, 260 Conn. 93, 132, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002). There are no corresponding provisions for civil matters that would place damages outside the scope of trial. See Practice Book §§ 15-1 through 24-33.